1  JENNER & BLOCK LLP
   Richard L. Stone (Bar No. 110022)
2  Andrew J. Thomas (Bar No. 159533)
   David R. Singer (Bar No. 204699)
3  Amy M. Gallegos (Bar No. 211379)
   633 West 5th Street, Suite 3600
4  Los Angeles, CA 90071
   rstone@jenner.com
5  athomas@jenner.com
   dsinger@jenner.com
6  agallegos@jenner.com

7
   Attorneys for Plaintiffs
8  Fox Broadcasting Company, Twentieth Century
   Fox Film Corp., and Fox Television Holdings, Inc.
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                    CV12- 04529 GHK (SHx)

13  FOX BROADCASTING COMPANY,        Case No.
    TWENTIETH CENTURY FOX FILM
14  CORPORATION, and FOX             **COMPLAINT FOR COPYRIGHT**
    TELEVISION HOLDINGS, INC.        **INFRINGEMENT AND BREACH**
15                                   **OF CONTRACT**
                Plaintiffs,
16
    v.
17                                   **DEMAND FOR JURY TRIAL**
    DISH NETWORK L.L.C., and
18  DISH NETWORK CORPORATION,

19              Defendants.

20

21

22

23        Plaintiffs Fox Broadcasting Company, Twentieth Century Fox Film

24  Corporation, and Fox Television Holdings, Inc. (collectively, "FOX") allege the

25  following against Dish Network L.L.C. and Dish Network Corporation

26  (collectively, "DISH"):

27

28

## NATURE OF THE ACTION

1.     FOX, as well as the other three major broadcast television networks – ABC, CBS and NBC – licenses DISH to retransmit primetime network programming as it is aired through owned-and-operated and affiliated local television stations across the country.  FOX also has agreed to license primetime broadcast programming to DISH for video-on-demand service to consumers under certain conditions, including prohibiting fast forwarding through commercials.  Commercial advertising is vital to broadcast television, as the robust choices and quality of primetime programming, including such hit shows as FOX's *Glee, The Simpsons, Bones,* and *Touch,* are possible only because they are supported by the advertising revenues generated from television commercials.

2.     Recently, DISH – in violation of the copyright laws and its license agreement with FOX – launched its own bootleg broadcast video-on-demand service called PrimeTime Anytime that is available to top-tier DISH subscribers who lease the Hopper set top box from DISH.  Once enabled, PrimeTime Anytime makes an unauthorized copy of the entire primetime broadcast schedule for all four major networks every night.  DISH advertises this unauthorized library, which is available for eight days and includes approximately 100 hours of programming, as providing "on demand access" to that programming.  To make matters worse, DISH operates its bootleg PrimeTime Anytime service so that the copies it makes are viewable commercial free.

3.     This lawsuit is not about DISH enhancing consumer choice.  By stealing FOX's broadcast programming to create a bootleg video-on-demand service for all network primetime programming, DISH is undermining legitimate consumer choice by undercutting authorized on-demand services and by offering a service that, if not enjoined, will ultimately destroy the advertising-supported ecosystem that provides consumers with the choice to enjoy free over-the-air, varied, high-quality primetime broadcast programming.  Nor is this case about

2104618.1

traditional DVRs used by consumers to time-shift individual television programs that they select and record, which FOX is not challenging in this action and which are completely different from DISH's unauthorized Primetime Anytime service.

4.     FOX and its affiliated companies invest hundreds of millions of dollars each year to create and deliver quality primetime television programs. These programs are available over the air free of charge to anyone in the United States. FOX, like all major broadcast networks, is able to offer such copyrighted programming to the public for free over the airwaves because the production, exhibition, and licensing of the programs is supported by commercial advertising. Quite simply, advertisements provide the lion's share of funding for the copyrighted programs that the public enjoys at no direct charge.

5.     There is a legitimate and varied market for licensed services that provide video-on-demand and programs for instant viewing over the Internet or on mobile devices. FOX's primetime programming is available on demand over the Internet on its website (fox.com), and on Hulu (Hulu.com), and FOX also licenses its programming to Amazon and iTunes, among others, which provide consumers with on-demand access to the programming. FOX's primetime programming is available to Hulu Plus subscribers in a reduced-commercial format, and available commercial-free to consumers who purchase it through Amazon and iTunes. This puts the lie to DISH's claim that its unauthorized and unlicensed video-on-demand service is somehow necessary to enhance "consumer choice." FOX also makes video-on-demand content available to cable and satellite providers such as DISH, but rather than use and comply with its license from FOX for video-on-demand content, DISH chose to steal copyrighted programming to make its own version to interfere with legitimate markets and services.

6.     DISH's unlawful conduct does not stop there. DISH's Sling Adapter redistributes and streams FOX's programming over the Internet in violation of

1   copyright law and DISH's agreements with FOX.  In doing so, it competes unfairly
2   with licensed providers such as iTunes and Amazon.

3          7.      In sum, DISH, like every other cable and satellite television
4   distributor, received narrow permission to retransmit the signals that include
5   FOX's primetime broadcast.  Unlike every other distributor, however, DISH
6   willfully took advantage of its position to make and distribute unauthorized copies
7   of FOX's primetime programming and render them commercial-free on playback,
8   so that DISH could advertise to the world that: "DISH CREATED
9   COMMERCIAL-FREE TV."  But DISH has no right to copy and distribute FOX's
10  programs through an unauthorized video-on-demand service.  Nor does DISH have
11  the right to distribute FOX's programs over the Internet, or to mobile devices.  It is
12  up to FOX – the owner of these valuable rights – to make them available to
13  licensees and consumers under terms and conditions set by FOX, not DISH.
14

15                            **THE PARTIES**
16         8.      Plaintiff Fox Broadcasting Company ("FBC") is a Delaware
17  corporation with its principal place of business at 10201 West Pico Blvd., Los
18  Angeles, California.   FBC operates the FOX Network, a national broadcast
19  television network with 203 affiliates reaching approximately 99% of all United
20  States households.

21         9.      Plaintiff Twentieth Century Fox Film Corp. ("Twentieth Century
22  Fox") is a Delaware corporation with its principal place of business at 10201 West
23  Pico Blvd., Los Angeles, California.  Twentieth Century Fox owns copyrights in
24  certain original primetime television programs broadcast on the FOX Network and
25  distributed via other media in the United States and around the world.

26         10.     Plaintiff Fox Television Holdings, Inc. ("Fox TV Holdings") is a
27  Delaware corporation with its principal place of business at 10201 West Pico Blvd.,
28  Los Angeles, California.  Fox TV Holdings is the parent company of the owned-

                                   - 4 -

1    and-operated local broadcast stations that carry the prime time programming
2    licensed by the FOX Network.

3          11.   On information and belief, Defendant Dish Network L.L.C. (Dish
4    Network) is a Colorado limited liability company with its principal place of
5    business at 9601 South Meridian Blvd., Englewood, Colorado.  Dish Network is a
6    multichannel video provider, offering television, movies and sports programming
7    through a Direct Broadcast Satellite system to subscribers who pay fees to Dish
8    Network to receive its service.  Dish Network receives and retransmits the signals
9    of local FOX stations to its subscribers pursuant to a Retransmission Consent
10   Agreement entered in 2002 with Fox TV Holdings (the "Retransmission Consent
11   Agreement"), most recently amended in 2010.

12         12.   On information and belief, Defendant Dish Network Corporation
13   ("Dish Corp.") is a Nevada Corporation with its principal place of business at 9601
14   South Meridian Blvd., Englewood Colorado.   On information and belief, Dish
15   Network is wholly owned by Dish Corp.

16         13.   On information and belief, each of the defendants was the agent,
17   joint venturer and/or employee of each of the remaining defendants, and in doing
18   the things hereinafter alleged, each was acting within the course and scope of said
19   agency, employment and joint venture with the advance knowledge, acquiescence,
20   and subsequent ratification of each and every remaining defendant.

21

22                     **JURISDICTION AND VENUE**

23         14.   This civil action seeks injunctive relief, compensatory damages, and
24   statutory damages for copyright infringement under the Copyright Act, 17 U.S.C.
25   101, *et seq.*, and for breach of contract.

26         15.   This Court has exclusive subject matter jurisdiction over the Copyright
27   Act claims pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has pendent
28   jurisdiction over the state law claims under 28 U.S.C. Section 1367.

2104618.1

16.　This Court has personal jurisdiction over DISH because it does continuous, systematic, and routine business in California.

17.　Venue is proper in this Court under 28 U.S.C. Sections 1391(b) and 1400 because a substantial part of the acts of infringement complained of herein occurred and will continue to occur in this district, and because the Court has personal jurisdiction over the parties.

## GENERAL ALLEGATIONS

### A.　FOX's Copyrighted Primetime Programming

18.　FOX is the legal or beneficial owner of the copyrights in numerous primetime programs that have been, or will be, exhibited on the FOX Network (the "FOX Programs").　The FOX Programs include popular and critically-acclaimed television series such as *Glee*, *The Simpsons*, *Family Guy*, *Touch*, and *Bones*.　A non-exhaustive list identifying representative samples of the FOX Programs is attached hereto as Exhibit A.

19.　Each FOX Program is a copyrighted work pursuant to Section 102 of the Copyright Act, 17 U.S.C. § 102.　The relevant copyrights have been registered with the United States Copyright Office or will be the subject of an application for registration filed with the Copyright Office.

20.　FOX broadcasts the FOX Programs over the air across the United States.　The cost of producing, exhibiting, and licensing the FOX Programs is paid for primarily by revenues from the advertisers whose commercials are shown during the programs.

### B.　Commercial Advertising and the Broadcast Television Business Model

21.　Broadcast television, sometimes called "free television" is transmitted over the airwaves by local television stations.　The business model for broadcast television is predicated on the sale of commercial advertisements that appear during

1    periodic breaks in a particular program.  Advertisers purchase commercial time or

2    "spots" to promote their own products or services.

3         22.    Television advertisers pay more money to have their advertisements

4    featured on television programs with higher viewership.  Advertisers also rely on

5    industry research and data that measure the number of viewers who actually view

6    the commercials during a particular program (sometimes called the number of

7    "impressions").  "Prime time" is the block of the television programming schedule

8    that attracts the most viewers, and advertisers therefore are willing to pay the

9    highest prices to have their commercials shown during this time.  Television

10   networks and local broadcast stations generally derive significant percentages of

11   their advertising revenues from selling the right to advertise before, during, or

12   immediately after the primetime programming airs.  Advertisers will not pay, or

13   will pay less, to have their advertisements placed with and around FOX's television

14   programming if the advertisements will be invisible to viewers.

15        23.    Broadcast television networks such as FOX also earn revenues from

16   retransmission consent agreements with various cable systems, satellite television

17   services, and other multichannel video programming distributors, all of whom pay a

18   fee for the right to retransmit broadcast television signals to their own subscribers.

19   However, the cost of producing high quality primetime programming such as the

20   Fox Programs is financed largely by advertising revenues.  If there were no

21   advertising revenues, the free broadcast television business model in the United

22   States would collapse.

23   **C.    <u>Secondary Markets for the Distribution and Sale of the FOX Programs</u>**

24        24.    FOX's business model – which is based on industry custom and

25   practice – further monetizes FOX's content by, among other things, distributing

26   that content via different media and platforms after the programs are first aired on

27   primetime television.  For example, a separate and growing market exists for

28   services that permit cable and satellite television subscribers to select from a library

of previously-aired television programs for immediate viewing on television. These services are commonly known as video-on-demand or "VOD." VOD programs are distributed after a short window following a program's original air date and time. However, the ability to fast-forward through commercials on VOD is often restricted.

25.   FOX also distributes the FOX Programs (including premium versions with reduced commercials) through various websites owned in whole or in part by FOX for home viewing, remote viewing, or viewing on mobile devices.

26.   FOX also distributes ultra-premium versions of the FOX Programs with <u>no</u> commercials via electronic rental and/or sell-through ("ESL") merchants such as iTunes, Amazon, Netflix, and Vudu for home viewing, remote viewing, or viewing on mobile devices.

27.   FOX recoups part of its substantial investment in creative programming by distributing its primetime programming, at a premium, in commercial-free formats, such as through on-demand television access, on-demand Internet access, and the sale of DVDs and Blu-Ray Discs.

28.   Therefore, separate markets and channels of distribution exist for consumers who wish to watch the FOX Programs in a reduced-commercial format, a commercial-free format, or a format that can be viewed on mobile devices or computers outside the home. For example, consumers who pay for a Hulu Plus subscription are able to view the FOX Programs on mobile devices with reduced commercials. Consumers may also pay to stream or download the FOX Programs from iTunes or Netflix and watch their favorite programs without commercials on a mobile device.

## D.   DISH's Unlawful Conduct

29.   On information and belief, one of DISH's primary strategies for differentiating itself from its competitors has been to focus on providing on-demand entertainment so as to position itself as an alternative to Netflix. For example, in

2011, DISH bought the assets of Blockbuster and launched Blockbuster@Home (originally called Blockbuster Movie Pass).   On a web page titled "Blockbuster@Home -- The Netflix Alternative" DISH boasts that its service provides subscribers with the ability to "stream thousands of movies to your TV, iPad®, or computer" and "not only gives customers an alternative to Netflix, it gives you one better."[1]  DISH also offers subscribers "thousands of On Demand TV shows and movies" on their computers through the licensed service DISH Online.[2]

30.    In March 2012, DISH introduced the Hopper Whole-Home HD DVR System (the "Hopper").  The Hopper is a set-top box leased by DISH to subscribers who purchase DISH's top-tier television packages.  The Hopper is essentially two recording systems in one box.  It contains a  two-terabyte hard drive which is partitioned into two sections, one controlled by DISH and one controlled by the subscriber.   The bootleg Primetime Anytime copies are made by DISH and are stored on the DISH-controlled section of the hard drive.  There is also a traditional, user-operated DVR that resides on the subscriber-controlled section of the hard drive, which the subscriber can use to select specific programs to record for later home viewing.

31.    When the Hopper was introduced, DISH boasted in a press release that Primetime Anytime "creates an on-demand library of approximately 100 hours of primetime TV shows."[3]  DISH's website currently touts Primetime Anytime as providing "On Demand access for 8 days to all HD programming that airs during

---

[1] http://dishtv.com/blog/2012/05/07/blockbusterhome-the-netflix-alternative/.
[2] http://www.dish.com/entertainment/movies/#movies-dish-online.
[3] http://press.dishnetwork.com/press-releases/hopper-whole-home-hd-dvr-system-now-avail/

primetime hours on ABC, CBS, FOX, and NBC without needing to schedule individual recordings."[4]

32.   DISH has promoted Primetime Anytime as a substitute for legitimate on-demand services. During an interview while demonstrating Primetime Anytime, DISH's Vice President Vivek Khemka stated, "I don't think you'd need Hulu or Hulu Plus after this."

33.   DISH creates Primetime Anytime's "on demand library of approximately 100 hours primetime of TV shows" by recording, without authorization, all programming aired by the four national broadcast networks during primetime hours every night. On information and belief, the programming recorded by DISH through the Primetime Anytime service consists exclusively of copyrighted network programming, including the FOX Programs.

34.   FOX has not consented to the recording of its copyrighted programs by DISH, or to the distribution by DISH to its subscribers of copies of all of FOX's primetime programming for subsequent on-demand, commercial-free viewing.

35.   DISH makes the programming it records through Primetime Anytime available for on-demand viewing without commercials through use of its Auto Hop Feature. Auto Hop, which is exclusive to Primetime Anytime, delivers to viewers the Primetime Anytime recordings without commercials and without the need to fast forward.

36.   The express, advertised purpose of Auto Hop is to permit subscribers using Primetime Anytime to watch their on-demand copies of network primetime programming commercial free. Auto Hop's launch was accompanied by a media blitz in which DISH announced that it was now offering "Commercial-free TV." Advertisements for DISH now boast that "DISH created commercial-free TV."

---

[4] http://www.dish.com/technology/receivers-dvrs/; *see also* http://www.dish.com/technology/hopper/ (touting the Hopper as providing "instant on-demand access to your favorite primetime shows for 8 days.").

- 10 -

2104618.1

37.    DISH's website announces: "WATCH COMMERCIAL FREE TV . . . Now you can automatically skip commercials in primetime TV – on ABC, CBS, FOX and NBC in HD."[5]   And DISH's Auto Hop Quick Start Guide instructs subscribers:

> Here's where Auto Hop comes into play.  When you are ready to watch your recorded PrimeTime Anytime content, simply open the PrimeTime Anytime or DVR menu screen.   You will see a small Hopper (red kangaroo) icon beside each show that you may watch commercial free.

> When you select a show with the Hopper icon, a pop-up message will appear on screen that asks whether you want to enable Auto Hop.  Choose 'yes,' and simply sit back and watch the show commercial free.  Choose 'no,' and watch with the commercials intact.

38.    The Quick Start Guide goes on to explain that Auto Hop is "not like fast-forwarding": "Once you have chosen Auto Hop for your show, you can put the remote control down; you've enabled Auto Hop's patented technology to skip the commercials during your show automatically."

39.    Auto Hop operates only on the primetime network programming recorded through Primetime Anytime, and not on non-primetime programming, cable programming, or programming recorded with the DVR that resides on the user-controlled section of the Hopper's hard drive.

40.    Based on publicly available information provided by DISH, the Primetime Anytime service operates as follows.  Once a subscriber activates the

---

[5] http://www.dish.com/redirects/promotion/offer2/?WT.srch=1&KBID =62283&WT.mc_id=GSBNAUTHOP_3194&gclid=CITpuP3GkrACFQ5rhwodOk Msp

2104618.1

service, DISH records all of the programming aired each night by the four broadcast networks during primetime hours (8 to 11 pm Monday through Saturday, and 7 to 11 pm Sunday). Each night of recorded programming is saved for eight days on a section of the Hopper's partitioned 2-terabyte hard drive that is controlled by DISH. During the eight days that the recorded programming is available, the user can select individual programs to watch or save to the user-controlled section of the hard drive for future viewing. The programs the user chooses not to save to the user-controlled section of the hard drive are automatically deleted by the Hopper after eight days.

41. The copying done by DISH through Primetime Anytime is fundamentally different from the copying done by consumers who record programs using traditional DVRs. A key difference is that DVRs are controlled by the consumer, not the cable or satellite provider. A DVR user can record any program on any channel he or she receives, and can start and stop the recording instantaneously, at any time during the recording process, using a remote control. None of this is true of Primetime Anytime. For example, the DISH subscriber cannot command Primetime Anytime to record specific channels; Primetime Anytime will always record all four broadcast networks and never any other channels. The DISH subscriber cannot command the Primetime Anytime system to record specific programs; Primetime Anytime always records the entire primetime schedule, including programs the subscriber has no interest in and will never watch. The DISH subscriber cannot command Primetime Anytime to instantly start or stop recording; Primetime Anytime cannot be activated or deactivated during primetime.

42. By offering Primetime Anytime, DISH is not merely providing its subscribers with a passive file storage device. DISH actively controls and is involved in the operation of all aspects of the Primetime Anytime system. Unlike a traditional DVR, the Primetime Anytime service was specifically and deliberately architected by DISH so that DISH can record, and/or encourage and facilitate the

- 12 -

1   unauthorized recording of, hundreds of hours of copyrighted television programs
2   and distribute those copies in a revised format so they can be viewed commercial-
3   free by the subscriber.  On information and belief, Primetime Anytime is able to
4   record all four networks simultaneously on a single tuner because DISH transmits
5   the four networks' signals from a single satellite transponder.  While Primetime
6   Anytime is activated, DISH records all network primetime programming on the
7   DISH-controlled portion of the Hopper hard drive.  On information and belief,
8   DISH then inserts data markers into the recorded Primetime Anytime copy of each
9   program and stores that copy on the DISH-controlled portion of the Hopper hard
10  drive for further transmission and distribution.

11      43.   The Hopper also includes a standard DVR, which resides on the user-
12  controlled portion of the hard drive, and which is separate and apart from
13  Primetime Anytime.  The subscriber can use this DVR to select, record, save, and
14  play back programming.  The use of this DVR to record and play back individual
15  programs selected by the user for later viewing in the home is not at issue in this
16  lawsuit.

17      44.   DISH also distributes copyrighted programming over the Internet to
18  subscribers' computers and mobile devices through its Sling Adapter.  The Sling
19  Adapter is a device which, when connected to a DISH set-top box such as the
20  Hopper, streams live television programming and DVR recordings over the
21  Internet, where they can be remotely viewed on DISH's website from any computer
22  with Internet access or from any mobile device running DISH's Remote Access
23  application.  On information and belief, DISH subscribers using the Sling Adapter
24  can view Primetime Anytime programming without commercials using the Auto
25  Hop feature.

26      45.   By making its bootleg, commercial-free, on-demand programming
27  available over the Internet and on mobile devices via Sling, DISH is usurping rights
28  it never negotiated for and does not possess, in order to compete unfairly with

- 13 -

1   authorized providers such as iTunes and Amazon, who pay for the right to offer
2   commercial-free VOD versions of FOX programming to their customers.

3   **E.**   **DISH's Breaches of the Retransmission Consent Agreement And Letter**
4        **Agreement**

5        46.   DISH does not have the right to copy and distribute FOX
6   programming in the ways described above.  Under the Retransmission Consent
7   Agreement, DISH does not have the right to use FOX's signal to create a VOD
8   service where Fox programming can be viewed commercial free.

9        47.   In 2010, the Retransmission Consent Agreement between FOX and
10  DISH was amended by a Letter Agreement.  The Letter Agreement states that FOX
11  will make available to DISH on a VOD basis all primetime series for which FOX
12  provides VOD content to any multichannel video programming distributor.
13  Although FOX has offered VOD content to DISH, DISH has never availed itself of
14  its VOD rights under the Retransmission Consent Agreement.

15       48.   In the event that FOX provides VOD content to DISH pursuant to the
16  Letter Agreement, the Letter Agreement expressly protects FOX against the
17  distribution of VOD content without commercials.  Specifically, if DISH offers
18  FOX VOD content to its subscribers, the Letter Agreement requires DISH to
19  disable fast-forward functionality during all advertisements, and expressly provides
20  that such fast-forward disabling is a necessary condition to the distribution of the
21  FOX content via VOD.

22       49.   The Letter Agreement expressly prohibits DISH from frustrating or
23  circumventing, or attempting to frustrate or circumvent, the protections granted to
24  FOX under the Letter Agreement, which include the protections against
25  commercial-free VOD described above.

26       50.   DISH does not have the right to distribute FOX programming over the
27  Internet via Sling either.  The Letter Agreement expressly states that DISH shall not
28  retransmit or otherwise distribute FOX's signal by means of the Internet, broadband

- 14 -

2104618.1

or any other online technology or wireless or cellular technology (such as cell phones, tablets, or PDAs).

## FIRST CLAIM FOR RELIEF

### (Direct Copyright Infringement)

51.     FOX hereby realleges and incorporates by reference each and every allegation of Paragraphs 1-50, above.

52.     Without the permission or consent of FOX, DISH has reproduced and distributed, and unless enjoined will continue to reproduce and distribute, FOX's copyrighted works, including but not limited to the FOX Programs listed in Exhibit A.

53.     Specifically, DISH has made, and unless enjoined will continue to make, copies of such works by recording them through the operation of its Primetime Anytime service.

54.     On information and belief, DISH has made, and unless enjoined will continue to make, copies of such works by reproducing them as part of the process by which it renders them commercial-free through Auto Hop.

55.     DISH causes and carries out the unauthorized copying of FOX's works by reproducing those works onto the DISH-controlled portion of its subscribers' Hopper set-top boxes as part of the Primetime Anytime service, and by reproducing those works in connection with the process by which it renders them commercial-free through Auto Hop.

56.     DISH has made, and unless enjoined will continue to make, copies of such works though the operation of the Sling Adapter.

57.     Without permission or consent of FOX, DISH has distributed and unless enjoined will continue to distribute FOX's copyrighted works by providing DISH subscribers with an unauthorized video-on-demand service for primetime television including the FOX Programs, and by distributing copies of the FOX

- 15 -

Programs through the Primetime Anytime system that it designed and operates, in a format that allows for commercial-free viewing.

58.   DISH has also exceeded the scope of its license agreements with FOX by streaming and/or distributing copies of the FOX Programs over the Internet via the Sling Adapter in direct contravention of FOX's contractual rights.   DISH is directly liable for these acts of infringement under the Copyright Act.

59.   DISH's reproduction and distribution of the FOX Programs as described above constitutes infringement of FOX's exclusive rights under copyright law in violation of 17 U.S.C. §§ 106(1), 106(3) and 501.

60.   DISH has also exceeded the scope of its license from FOX to transmit the FOX Programs to the public in violation of FOX's exclusive rights under 17 U.S.C. §§ 106(4) and 501.

61.   DISH is directly liable for these acts of infringement under the Copyright Act.

62.   The infringement of FOX's rights in each of its copyrighted works constitutes a separate and distinct act of infringement.

63.   DISH's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to FOX's rights .

64.   As a result of DISH's willful copyright infringement, FOX has been and will continue to be irreparably harmed.

65.   Unless restrained by the Court, DISH will continue to engage in such willful copyright infringement.

2104618.1

## SECOND CLAIM FOR RELIEF

### (Secondary Copyright Infringement)

66.   FOX hereby realleges and incorporates by reference each and every allegation of Paragraphs 1-65, above.

67.   As an alternative theory to its direct infringement claim, in the event that DISH contends that the unlawful copying described herein is done by its subscribers, FOX further alleges the following:

68.   The unauthorized copying of the FOX Programs is a violation of FOX's exclusive rights under 17 U.S.C. § 106.  Among other things, and without limitation, this conduct amounts to the unauthorized reproduction of FOX's copyrighted works.

69.   The unauthorized copying of the FOX Programs that DISH enables, encourages, and facilitates as described above is without FOX's consent and not otherwise permissible under the Copyright Act.

70.   DISH is liable under the Copyright Act for the infringing acts of DISH subscribers as a contributory copyright infringer.  DISH, through its own conduct, has induced, caused, encouraged, assisted and/or materially contributed to this infringing activity.  DISH has actual and constructive knowledge of the direct infringement of FOX's copyrights by DISH subscribers.  Indeed, DISH actively promotes the infringements as a reason to purchase its products and services, provides tools that are indispensable to these infringements, in particular the Hopper set-top box and Primetime Anytime service, and continuously facilitates the infringements including by, among other things, encouraging subscribers to use PrimeTime Anytime to copy FOX's copyrighted works and storing the unauthorized copies on the DISH-controlled section of the Hopper's hard drive.

71.   DISH is vicariously liable under the Copyright Act for the infringing acts of DISH subscribers.  DISH has the right and ability to supervise and/or control the infringing conduct of users of Primetime Anytime.  *First*, DISH has

- 17 -

made a deliberate decision to offer its users features that are specifically designed to enable widespread infringements, when it could have prevented or greatly limited that conduct by declining to offer or to facilitate or support use of those unlawful features. *Second*, DISH specifically designed Primetime Anytime (and provided ongoing assistance to its customers) to encourage the reproduction of copyrighted works. *Third*, DISH's regular involvement is an indispensable link in its customers' infringing conduct.

72.    DISH has a direct financial interest in the infringement of FOX's copyrights by DISH subscribers. DISH's economic success is directly tied to the popularity of the infringing conduct that they seek to encourage. Indeed, the infringing capabilities of Primetime Anytime – specifically that it creates unauthorized copies of primetime network programming for commercial-free viewing – are the Hopper's principal selling points.

73.    DISH is liable under the Copyright Act for inducing the infringing acts of DISH subscribers. DISH took active steps to encourage its subscribers to use Primetime Anytime to infringe FOX's copyrights. DISH distributed the Hopper with the Primetime Anytime service with the intent that its subscribers use Primetime Anytime to infringe FOX's copyrights, as evidenced by its numerous advertisements and user manuals which encourage subscribers to activate Primetime Anytime in order to continuously record all primetime network programming and watch it on demand without commercials.

74.    DISH's acts have been willful, intentional and purposeful, in disregard of and with indifference to FOX's rights.

75.    As a result of DISH's conduct, FOX has been and will continue to be irreparably harmed.

76.    Unless restrained by the Court, DISH will continue to engage in such willful copyright infringement.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

77.    FOX hereby realleges and incorporates by reference each and every allegation of Paragraphs 1-76, above.

78.    FOX has fully performed all obligations required of it under the Retransmission Consent Agreement, as amended by the Letter Agreement, except to the extent prevented or excused by DISH's breaches or other wrongful conduct.

79.    DISH has materially breached the Retransmission Consent Agreement, as amended by the Letter Agreement, by providing to its subscribers commercial-free FOX Programs on demand, via the Primetime Anytime system and Auto Hop feature.  Because the Letter Agreement provides protections against the distribution of commercial-free FOX Programs on demand, DISH has breached its express contractual obligation not to take any actions intended to frustrate or circumvent, or attempt to frustrate or circumvent, the protections granted to FOX under the Letter Agreement.

80.    DISH has also materially breached the Retransmission Consent Agreement, as amended by the Letter Agreement, by distributing the signals of FOX stations over the Internet via its Sling Adapter product and service.  DISH's actions relating to the Sling Adapter product and service violate the Letter Agreement, which prohibits distribution via the Internet.

81.    FOX has been damaged as a direct and proximate result of the breaches set forth above.

2104618.1

## FOURTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith)

82. FOX hereby realleges and incorporates by reference each and every allegation of Paragraphs 1-81, above.

83. By providing to its subscribers commercial-free FOX Programs on demand, via the Primetime Anytime service and Auto Hop feature, and by distributing the signals of FOX stations over the Internet via its Sling Adapter product and service, DISH has deprived FOX of the right to receive benefits under the Retransmission Consent Agreement, as amended by the Letter Agreement.

84. DISH's conduct constitutes a breach of the implied covenant of good faith and fair dealing implicit in every contractual relationship.

85. FOX has been damaged as a direct and proximate result of DISH's breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, FOX prays for judgment as follows:

1. For an order preliminarily and permanently enjoining and restraining DISH and its officers, agents, servants, and employees and all those in active concert or participation with them, from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the unauthorized reproduction or distribution of the FOX Programs without consent;

2. For a Declaratory Judgment under 28 U.S.C. §§ 2201(a) and 2202, that DISH has infringed FOX's copyrights in violation of 17 U.S.C. § 101, et seq. through the conduct alleged herein;

3. For an award of compensatory and statutory damages, costs, and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law;

1    4.    For damages for breach of contract and breach of the implied covenant

2  of good faith and fair dealing in an amount to be determined at trial; and

3    5.    For such other relief as the Court may deem just and proper.

4

5  DATED:  May 24, 2012                    JENNER & BLOCK LLP

6

7

8                                 By: _____

9                                     Richard L. Stone

10                                    Attorneys for Plaintiffs
                                      Fox Broadcasting Company,
11                                    Twentieth Century Fox Film Corp.,
12                                    and Fox Television Holdings, Inc.

13

14

15                          **DEMAND FOR JURY TRIAL**

16    Plaintiffs hereby demand a jury trial.

17

18  DATED:  May 24, 2012                    JENNER & BLOCK LLP

19

20

21                                 By: _____

22                                     Richard L. Stone

23                                    Attorneys for Plaintiffs
                                      Fox Broadcasting Company,
24                                    Twentieth Century Fox Film Corp.,
25                                    and Fox Television Holdings, Inc.

26

27

28

                                    - 21 -

2104618.1

# Exhibit "A"

## Illustrative Copyright Registrations

| No. | Program Title | Broadcast Date | Copyright Owner | Screenplay Registration[1] | Broadcast Station |
|-----|---------------|----------------|-----------------|----------------------------|-------------------|
| 1. | American Dad; "Toy Whorey" | 05/13/2012 | Twentieth Century Fox Film Corporation | PAU-3-536-825 | FBC |
| 2. | Bob's Burgers; "Bad Tina" | 05/13/2012 | Twentieth Century Fox Film Corporation | PAU-3-588-234 | FBC |
| 3. | Bob's Burgers; "Beefsquatch" | 05/20/2012 | Twentieth Century Fox Film Corporation | PAU-3-588-236 | FBC |
| 4. | Bones; "The Past in the Present" | 05/14/2012 | Twentieth Century Fox Film Corporation | PAU-3-611-816 | FBC |
| 5. | The Cleveland Show; "Mama Drama" | 05/13/2012 | Twentieth Century Fox Film Corporation | PAU-3-547-800 | FBC |
| 6. | The Cleveland Show; "All You Can Eat" | 05/20/2012 | Twentieth Century Fox Film Corporation | PAU-3-571-939 | FBC |
| 7. | Family Guy; "Tea Peter" | 05/13/2012 | Twentieth Century Fox Film Corporation | PAU-3-544-437 | FBC |
| 8. | Family Guy; "Family Guy Viewer Mail #2" | 05/20/2012 | Twentieth Century Fox Film Corporation | PAU-3-560-983 | FBC |
| 9. | Family Guy; "Internal Affairs" | 05/20/2012 | Twentieth Century Fox Film Corporation | PAU-3-560-985 | FBC |
| 10. | Glee; "Props" | 05/15/2012 | Twentieth Century Fox Film Corporation | PAU-3-611-825 | FBC |
| 11. | The Simpsons; "How I Wet Your Mother" | 05/13/2012 | Twentieth Century Fox Film Corporation | PAU-3-571-923 | FBC |
| 12. | The Simpsons; "Ned 'N Edna's Blend Agenda" | 05/13/2012 | Twentieth Century Fox Film Corporation | PAU-3-586-023 | FBC |

---

[1] Audiovisual applications pending.

2103684.3

Exhibit A
22

| No. | Program Title | Broadcast Date | Copyright Owner | Screenplay Registration[1] | Broadcast Station |
|---|---|---|---|---|---|
| 13. | The Simpsons; "At Long Last Leave" | 05/20/2012 | Twentieth Century Fox Film Corporation | PAU-3-571-922 | FBC |
| 14. | The Simpsons; "Lisa Goes Gaga" | 05/20/2012 | Twentieth Century Fox Film Corporation | PAU-3-576-622 | FBC |
| 15. | Touch; "Music of the Spheres" | 05/10/2012 | Twentieth Century Fox Film Corporation | PAU-3-606-242 | FBC |
| 16. | Touch: "Tesselations" | 05/17/2012 | Twentieth Century Fox Film Corporation | PAU-3-612-007 | FBC |

Exhibit A
23

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV12- 4529 GHK (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
JENNER & BLOCK LLP
Richard L. Stone (Bar No. 110022)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
(213) 239-5100

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| FOX BROADCASTING COMPANY, INC., TWENTIETH CENTURY FOX FILM CORP., and FOX TELEVISION HOLDINGS, INC.<br><br>PLAINTIFF(S)<br><br>v.<br><br>DISH NETWORK L.L.C. and DISH NETWORK CORP.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12-04529** GHK (SHx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Richard Stone_____, whose address is _633 West 5th Street, Suite 3600, Los Angeles, CA 90071_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _May 24, 2012_____

By: _____
                    Deputy Clerk

                (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
FOX BROADCASTING COMPANY, INC., TWENTIETH CENTURY FOX FILM CORP., and FOX TELEVISION HOLDINGS, INC.

**DEFENDANTS**
DISH NETWORK L.L.C. and DISH NETWORK CORP.,

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
JENNER & BLOCK LLP, Richard L. Stone (Bar No. 110022)
633 West 5th Street, Suite 3600, Los Angeles, CA 90071
(213) 239-5100

**Attorneys** (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. 101, ct scq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12-04529**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page I of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s):

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles (Fox Broadcasting Company)<br>Los Angeles (Twentieth Century Fox Film Corp.)<br>Los Angeles (Fox Television Holdings, Inc.) | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles (Dish Network L.L.C.)<br>Los Angeles (Dish Network Corporation) | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_     Date 5/24/2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                                    **CIVIL COVER SHEET**                                    Page 2 of 2