WILLIAM A. MOLINSKI (SBN 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Tel: +1-213-629-2020 / Fax: +1-213-612-2499

ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105-2669
Tel: +1-415-773-5700 / Fax: +1-415-773-5759

E. JOSHUA ROSENKRANZ (*pro hac vice*)
jrosenkranz@orrick.com
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
ELYSE D. ECHTMAN (*pro hac vice*)
eechtman@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
Tel: +1-212-506-5000 / Fax: +1-212-506-5151

MARK A. LEMLEY (SBN 155830)
mlemley@durietangri
MICHAEL PAGE (SBN 154913)
mpage@durietangri
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
Telephone: +1-415-362-6666

Attorneys for Defendants
Dish Network L.L.C. and Dish Network Corp.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX BROADCASTING COMPANY, INC., TWENTIETH CENTURY FOX FILM CORP., and FOX TELEVISION HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DISH NETWORK L.L.C. and DISH NETWORK CORP., <br><br> Defendants. | Case No. CV12-04529 GHK (SHx) <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO SHORTEN TIME TO HEAR PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY** |

# TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  BACKGROUND ...................................................................................... 1

    A.  DISH's Hopper and Prime Time Anytime .............................................. 1

    B.  DISH's Latest Innovation, Auto Hop .................................................... 2

    C.  The Television Networks' Public Attacks on Auto Hop ............................ 3

    D.  DISH's First-Filed Action in New York for a Declaratory Judgment Against the Four Networks .................................................................. 4

    E.  Fox, CBS and NBC's Later-Filed Lawsuits in the Central District of California ......................................................................................... 4

    F.  DISH'S Efforts to Coordinate ............................................................. 5

III.  FOX'S *EX PARTE* APPLICATION SHOULD BE DENIED ...................... 5

    A.  This Court Should Defer to the New York Court to Resolve this Dispute ........................................................................................... 5

        1.  As the Forum of the First-Filed Action a Strong Presumption Weighs in Favor of Proceeding in New York ................................... 6

        2.  This Court Should Defer to the Court in New York to Determine Whether Exceptions to the First-to-File Rule Exist Here ................. 8

        3.  Even Absent the Benefit of the First-to-File Rule, Compelling Reasons Exist for Proceeding in New York ................................... 11

            a.  Forum Selection Clauses and Convenience of the Parties Weigh in Favor of Proceeding in New York ........................... 11

            b.  DISH's Declaratory Judgment Action Avoids Piecemeal Litigation and Multiplicity of Lawsuits ................................. 12

        4.  No Exceptions to the First-to-File Rule Apply Here That Would Justify Proceeding in a Later-Filed Forum ................................... 13

    B.  Plaintiff Has Not Demonstrated It Is Entitled to *Ex Parte* Relief .......... 15

IV.  CONCLUSION........................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alltrade Inc. v. Uniweld Prods., Inc.,*
946 F.2d 622 (9th Cir. 1991) .................................................................. 6, 7, 9

*Audio Entm't Network v. AT&T Co.,*
1999 U.S. App. LEXIS 34500, (9th Cir. Cal. Dec. 28, 1999) ........................ 8

*Broadcom Corp. v. Qualcomm Inc.,*
2005 U.S. Dist. LEXIS 45829, (C.D. Cal. Sept. 26, 2005) ............................. 8

*Buchanan v. Neighbors Van Lines,*
2010 U.S. Dist. LEXIS 108390 (Sept. 27, 2010) ......................................... 16

*Cedars Sinai Med. Ctr. v. Shalala,*
125 F.2d 765 (9th Cir. 1997) ..................................................................... 10

*Chiron Corp. v. Advanced Chemtech, Inc.,*
869 F. Supp. 800 (N.D. Cal. 1994) .............................................................. 14

*Daimler Chrysler Corp. v. General Motors Corp.,*
133 F. Supp. 2d 1041 (N.D. Ohio 2001) ....................................................... 7

*Employers Ins. of Wausau v. Fox Entm't Group, Inc.,*
522 F.3d 271 (2d Cir. 2008) ......................................................................... 6

*Genentech, Inc. v. Eli Lilly & Co.,*
998 F.2d 931 (Fed. Cir. 1993) ............................................................... 6, 11

*Heartland Payment Sys., Inc. v. Verifone Israel Ltd.,*
2010 WL 1662478 (N.D. Cal. Apr. 22, 2010) ............................................. 10

*Horn & Hardart Co. v. Burger King Corp.,*
476 F. Supp. 1058 (S.D.N.Y. 1979) .............................................................. 7

*In re Intermagnetics,*
101 B.R. 191 (C.D. Cal. 1989) ................................................................... 16

*Intuitive Surgical, Inc. v. Cal. Inst. of Tech.,*
2007 U.S. Dist. LEXIS 31753 (N.D. Cal. Apr. 18, 2007) ......................... 7, 8, 9

*Medlock v. HMS Host USA, Inc.,*
2010 U.S. Dist. LEXIS 133143 (E.D. Cal. Dec. 15, 2010) ............................ 8

*Mission Power Eng'g Co. v. Continental Cas. Co.,*
883 F. Supp. 488 (C.D. Cal. 1995) ............................................................. 16

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982) ...................................................................... 1, 9

*Puri v. Hearthside Food Solutions LLC,*
2011 U.S. Dist. LEXIS 144191 (C.D. Cal. Dec. 13, 2011) ........................... 11

*Puri v. Hearthside Food Solutions LLC,*
  2011 WL 6257182 (C.D. Cal. 2011) ........................................................................ 7

*Reliance Ins. Co. v. Six Star, Inc.*
  135 F. Supp. 2d 49, (S.D.N.Y. 2001) ....................................................................... 9

*Shizzle Pop LLC v. Wham-O, Inc.,*
  2010 WL 3063066 (C.D. Cal. Aug. 2, 2010) ......................................................... 10

*Summit Entm't v. Bath & Body Works Brand Management, Inc.,*
  2011 WL 2649973 (C.D. Cal., July 3, 2011) ......................................................... 14

*Wilton v. Seven Falls Co.,*
  515 U.S. 277 (1995) ................................................................................................. 7

*Xoxide Inc. v. Ford Motor Co.,*
  448 F. Supp. 2d 1188 (C.D. Cal. 2006) ................................................................. 13

*Z-Line Designs, Inc. v. Bell'O Intl., LLC,*
  218 F.R.D. 663 (N.D. Cal. 2003) ........................................................................... 13

**ARTICLES**

Matthew Belloni, *DISH vs. TV Networks: Attorneys Readying Showdown over Auto Hop,*
  THE HOLLYWOOD REPORTER (May 23, 2012) .................................................... 3, 13

Tim Molloy, *Les Moonves on Dish's Auto Hop: 'It's Illegal',* THE WRAP (May 27, 2010) ........... 3

## I.      PRELIMINARY STATEMENT

Prior to plaintiffs Fox Entertainment Group, Inc., Fox Television Holdings, Inc. and Fox Cable Network Services, L.L.C. ("Fox") having filed this action, defendant Dish Networks L.L.C. ("DISH") filed an action in the District Court for the Southern District of New York against Fox and the three other networks, CBS, NBC and ABC seeking a declaratory judgment that its Hopper and Auto Hop technology does not infringe on the networks' copyrights or breach its agreements with these networks.

This Court should refrain from taking any action on Fox's *ex parte* application pending a determination by the New York court as to the proper venue for this dispute.  Under the well-accepted "first-to-file" rule, when two or more actions are filed in different venues involving the same parties and controversy, the first-filed action is the forum in which the dispute shall proceed.  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982).  Further, even if there was a basis to deviate from that rule, it is the first-filed court that should make that determination.  *Id.*

DISH has filed a motion for an injunction in New York against each of the networks, including Fox, and an application for a temporary restraining order against Fox to prevent the networks from proceeding in California.  Until that motion and application are decided, this Court should decline to rule on Fox's *ex parte* application.

## II.     BACKGROUND

### A.      DISH's Hopper and Prime Time Anytime

In mid-March 2012, DISH introduced a new high definition ("HD") DVR called the Hopper.  Declaration of William A. Molinski in support of Defendants' Opposition to Plaintiff's *Ex Parte* Application to Shorten Time to Hear Plaintiffs' Motion for Expedited Discovery ("Molinski Decl."), Ex. A (DISH Complaint) at ¶4.  The Hopper is one of the most technologically advanced DVRs on the market.

*Id.* For example, it has two terabytes of hard drive storage, enabling it to record up to 20,000 hours of programming, more than twice the capacity of any other DVR on the market. *Id.*

The Hopper has PrimeTime Anytime capability, a feature exclusive to the Hopper. *Id.* This allows viewers, at their election with the push of a button, to record all of the primetime programming of ABC, CBS, Fox, and NBC. *Id.* These recordings are saved for eight days after they have aired. *Id.* Viewers can use companion "Joey" boxes to view the recordings on up to four different televisions in the home. *Id.* This feature has been available since the Hopper device was made available to viewers in March 2012. *Id.* at ¶19.

### B. DISH's Latest Innovation, Auto Hop

On May 10, 2012, the newest feature of the Hopper was introduced—the "Auto Hop." *Id.* at ¶ 5. Auto Hop uses patented technology to give the viewer the option to fast-forward efficiently through commercials with the touch of a button when starting playback of programming recorded as part of PrimeTime Anytime. *Id.* This feature only works with playback of programming recorded through PrimeTime Anytime after 1 a.m. Eastern Time the day after the show originally airs, and it cannot be used for live broadcasts. *Id.*

DISH does not alter the network signal. The original program airs in the same form transmitted by the network. DISH does not alter the DVR recording either. The commercials are not deleted or erased from the recorded program. The commercials are viewable if the customer does not elect to use AutoHop for playback. Even with AutoHop enabled, customers can view commercials by fast forwarding or rewinding during the playback of a recorded show. All AutoHop does is to compress the fast-forward function into a split second whenever the DVR hits a block of commercials. *Id.* at 23-24.

DISH's Auto Hop feature promotes consumer autonomy. *Id.* at ¶25. Viewers have skipped commercials for decades. *Id.* Viewers commonly use the

1  commercial break as a time to get up and momentarily leave the room. *Id.* Ever

2  since the advent of the remote control, viewers have changed channels or muted the

3  sound during commercial breaks. *Id.* And, since the advent of the VCR and DVR,

4  viewers playing back a show have fast-forwarded through commercials. *Id.* DISH

5  is simply making it easier for viewers to refuse to be a captive audience and to

6  exercise the well-accepted choice to skip a commercial. *Id.*

**C.  The Television Networks' Public Attacks on Auto Hop**

8  Shortly after DISH unveiled its Auto Hop feature, the Major Television

9  Networks began publicly attacking the feature. *Id.* at ¶32. For example, on

10  May 17, 2012, CBS Chairman Les Moonves said "[t]hey can't put our content on

11  without commercials. They just can't do it. It's illegal." Tim Molloy, *Les*

12  *Moonves on Dish's Auto Hop: 'It's Illegal'*, THE WRAP (May 27, 2010),

13  http://thewrap.prod.acquia-sites.com/tv/article/cbs-les-moonves-dishs-auto-hop-its-

14  illegal-40346. On May 23, 2012, the Hollywood Reporter published a news article

15  on the Major Television Networks' plans to sue DISH. Matthew Belloni, *DISH vs.*

16  *TV Networks: Attorneys Readying Showdown over Auto Hop*, THE HOLLYWOOD

17  REPORTER (May 23, 2012), http://www.hollywoodreporter.com/thr-esq/dish-auto-

18  hop-tv-networks-lawsuit-327958 (reporting that "the parent companies of the four

19  major broadcasting networks—Fox Broadcasting, NBCUniversal, ABC/Disney

20  Television Group and CBS Corp.—have begun consulting with major law firms

21  with the expectation that litigation will be filed against DISH" and that "[t]he

22  networks are said to be examining their DISH license agreements, looking for

23  breaches of contract that can be alleged along with claims for copyright

24  infringement. One top exec said a lawsuit should be expected within a month.").

25  Additionally, CBS, NBC, and Fox began rejecting advertising from DISH that

26  featured the Hopper or Auto Hop. Molinski Decl., Ex. A at ¶35.

27

28

**D.    DISH's First-Filed Action in New York for a Declaratory Judgment Against the Four Networks**

DISH filed a complaint for declaratory relief against ABC, CBS, Fox, and NBC in District Court in the Southern District of New York on Thursday, May 24, 2012, at 4:06 p.m. E.D.T (1:06 p.m. P.D.T.) (the "New York Action").  Molinski Decl., Ex. A.  The complaint seeks a declaratory judgment that (1) DISH has not infringed any copyrights by providing the Auto Hop technology to its customers for use with PrimeTime Anytime recording playback and (2) DISH is acting within its rights under its agreements with the various networks in providing the Auto Hop technology to its customers for use with PrimeTime Anytime recording playback. *Id.* at p. 12.

DISH brought a single action in New York to avoid duplicative, piecemeal litigation, and to resolve the dispute over the Hopper and Auto Hop.  DISH brought its suit because the networks were interfering with DISH's ability to market and sell its product by refusing advertising and casting aspersions on the legality of Auto Hop.

DISH selected the Southern District of New York as the venue for its action because it was the only forum where all the parties and issues could be joined. DISH's agreement with ABC contains a mandatory New York forum selection clause.  Molinski Decl., Ex. C (Echtman Decl. ¶17). DISH's agreement with CBS contains a forum selection clause that allows for actions in either New York or Colorado.  *Id.*, Ex. C (Echtman Decl.¶16). Additionally, three of DISH's agreements with these four networks require the contracts to be interpreted under New York law.  *Id.*, Ex. C (Echtman Decl. ¶¶14, 15, 17).

**E.    Fox, CBS and NBC's Later-Filed Lawsuits in the Central District of California**

Fox filed the instant case against DISH on Thursday, May 24, 2012, at 1:35 p.m. P.D.T. (4:35 p.m. E.D.T.), after DISH filed the global action in New York.

NBC and CBS also filed cases against DISH in the Central District of California on Thursday, May 24, 2012, at 2:32 p.m. P.D.T. (5:32 p.m. E.D.T.) and 3:29 p.m. P.D.T. (6:29 p.m. E.D.T.), respectively. *Id.*, Ex. C (Echtman Decl., Exs. 5 (NBC Complaint), 6 (CBS Complaint)). Even though the three suits reflect apparent coordination among the three networks—with both the CBS and NBC actions being filed by the same attorneys—no network filed a related case notice for any of these cases. *Id.*, Ex. C (Echtman Decl. Exs. 4 (Fox Complaint), 5 (NBC Complaint), 6 (CBS Complaint). Indeed, even though the Fox, CBS and NBC cases all relate to DISH's Hopper DVR system, and even though the three actions have similar or identical claims of copyright infringement and would involve a substantial duplication of labor by three different judges, all three civil cover sheets check "no" as to whether there were related cases filed in the same court. *Id.*

## F.     DISH'S Efforts to Coordinate

Counsel for DISH has repeatedly reached out to counsel for Fox, as well as counsel for CBS and NBC, to attempt to resolve the "first to file" issue between the parties. Dish sent a letter on Friday afternoon, explaining DISH's position and requesting that Fox, CBS, and NBC agree to dismiss stay or transfer the later-filed actions. Molinski Decl., ¶3. Despite the fact that Fox knew that DISH would be required to work over the holiday weekend to respond to its *ex parte* application, Fox was unwilling to make time over the weekend to meet and confer with DISH on the issue. *Id.* at ¶6. Additionally, counsel for DISH explicitly requested that Fox withdraw its *ex parte* application until such time as the venue issue could be ruled on by the proper court. *Id.* at ¶5. Again, counsel for Fox refused. *Id.* at ¶¶4, 6.

## III.     FOX'S *EX PARTE* APPLICATION SHOULD BE DENIED

### A.     This Court Should Defer to the New York Court to Resolve this Dispute

Dish filed the New York Action prior to Fox, NBC or CBS bringing suit in

California.  DISH brought its action in New York for sound reasons, as New York provides the only forum where all of the claims between these parties can be decided and where mandatory forum selection and choice of law provisions in the contracts between these parties dictate actions be brought.  DISH has filed a motion in New York to enjoin this Fox lawsuit (and the related NBC and CBS actions) from proceeding.  DISH has also moved for a temporary restraining order specifically against Fox to temporarily restrain it from proceeding on this *ex parte* application until the New York court determines the appropriate forum for this dispute.  This Court should abstain from deciding this *ex parte* application until the court in New York determines those motions.[1]

## 1.   As the Forum of the First-Filed Action a Strong Presumption Weighs in Favor of Proceeding in New York

The "first to file" rule allows a district court to transfer, stay, or dismiss an action when a similar action has been filed in another district court.  *Alltrade Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).[2]  The first-to-file rule should not be disregarded lightly and a presumption exists for proceeding in the first-filed forum.  *Id.  See also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (holding that "there must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action."), abrogated in part, on different grounds, by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) (holding that the standard for review of "first to file" decisions should be abuse of discretion); *Puri v. Hearthside Food Solutions LLC*, 2011 WL 6257182, at *1 (C.D. Cal. 2011) (unless compelling circumstances justify departure from the rule, the

---

[1] At this time, Dish is asking only that the Court refrain from ruling on Fox's *ex parte* application pending the New York Court's on forum.  If the New York court enjoins this action, DISH will then ask the Court to dismiss or transfer this action.

[2] The Second Circuit also follows the "first-to-file" rule.  *See Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (citing *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989).

1  first-filing party should be permitted to proceed without concern about a conflicting

2  order being issued in the later-filed action).

3       In deciding whether to apply the first-to-file rule the court should consider

4  1) the chronology of the two actions, 2) the similarity of the parties, and 3) the

5  similarity of the issues. *Intuitive Surgical, Inc. v. Cal. Inst. of Tech.*, 2007 U.S.

6  Dist. LEXIS 31753, at *6-7 (N.D. Cal. Apr. 18, 2007). *See also Alltrade, Inc.*, 946

7  F.2d at 625 (listing and discussing the criteria for application of the first-to-file rule

8  is chronology and identity of parties).

9       These criteria are clearly met here and give priority to the New York Action.

10  DISH unquestionably filed its action prior to the Fox, NBC and CBS actions.

11  While the New York Action was filed less than an hour before the first of the

12  California actions, courts have said that "the policy rationale behind the first-to-file

13  rule is supported by reasons 'just as valid when applied to the situation where one

14  suit precedes the other by a day as they are in a case where a year intervenes

15  between the suits.'" *Intuitive Surgical, Inc.*, 2007 U.S. Dist. LEXIS 31753, at *6-7

16  (quoting *Genentech, Inc.*, 998 F.2d at 938); *Daimler Chrysler Corp. v. General*

17  *Motors Corp.*, 133 F. Supp. 2d 1041, 1042-43 (N.D. Ohio 2001) (complaint filed 12

18  minutes before second complaint in different forum was given priority under first-

19  to-file rule); *Horn & Hardart Co. v. Burger King Corp.*, 476 F.Supp. 1058, 1060-61

20  (S.D.N.Y. 1979) (enjoining action filed 2-1/2 hours later based on first-filed rule

21  and finding that "brevity of the interlude" did not affect the danger of inconsistent

22  results and duplication of judicial effort). In *Intuitive Surgical*, the court applied the

23  first-to-file rule when the later suit was filed only two hours later on the same day

24  observing:

25       The court finds that the first-to-file rule is applicable and required
26       deference to the first-filed court, notwithstanding the near
         simultaneous nature of the filings. The court is persuaded that
27       applying the first-to-file rule in this case furthers the sound policy
28       rationale underlying it.

1    *Intuitive Surgical, Inc.*, 2007 U.S. Dist. LEXIS 31753, at *7-8.

2          The remaining criteria of the first-to-file rule apply here as well.  DISH

3    brought its declaratory judgment action against Fox and the other two networks

4    who have brought suit in California, as well as against ABC.  DISH seeks a

5    declaration that it is not liable to Fox for copyright infringement or breach of its

6    agreement with Fox for its Auto Hop feature of the Hopper and PrimeTime

7    Anytime; Fox has sued DISH for copyright infringement and breach of contract

8    based on its Auto Hop feature and PrimeTime Anytime.  There can be no dispute

9    that the New York Action substantially overlaps with this action.  *Audio Entm't*

10   *Network v. AT&T Co.*, 1999 U.S. App. LEXIS 34500, *3-4 (9th Cir. Cal. Dec. 28,

11   1999) (finding that "[t]he parties and issues do not need to be exactly identical" and

12   no abuse of discretion for deferral to another federal court "where the parties and

13   issues are substantially similar"); *Medlock v. HMS Host USA, Inc.*, 2010 U.S. Dist.

14   LEXIS 133143, at *8-9, *14-15 (E.D. Cal. Dec. 15, 2010) (transferring later filed

15   action that involved substantially similar claims); *Broadcom Corp. v. Qualcomm*

16   *Inc.*, 2005 U.S. Dist. LEXIS 45829, at *8-10 (C.D. Cal. Sept. 26, 2005) (enjoining

17   Defendant from pursuing later-filed action involving substantially similar claims).

18   Wise judicial administration, conservation of judicial resources, the risk of

19   potentially conflicting rulings and the comprehensive disposition of litigation

20   support the deferment of this action in light of the first-filed New York Action.

21         **2.**    **This Court Should Defer to the Court in New York to**

22                  **Determine Whether Exceptions to the First-to-File Rule**
                    **Exist Here**

23         While there are exceptions to the first-to-file rule, the New York court should

24   determine whether those exceptions apply.  *Pacesetter Sys.*, 678 F.2d at 96

25   ("[N]ormally the forum non conveniens argument should be addressed to the court

26   in the first-filed action.").  When the threshold factors of the first-to-file rule are

27   met, a court can still dispense with the rule in the exercise of its discretion, when

28   "wise judicial administration" does not cause rigid application.  *Alltrade*, 946 F.2d

1    at 627-28.  The circumstances that allow departure from the rule include bad faith,

2    anticipatory suit, and forum shopping.  *Id.* at 628.

3        These narrow exceptions to the first-to-file rule do not apply here.  But even

4    if there were a basis to apply these exceptions, ***it is the court in New York that***

5    ***should be making that determination,*** not this court.  *Intuitive Surgical*, 2007 U.S.

6    Dist. LEXIS 31753 at *8 ("the court in the first-filed action should decide whether

7    there is an exception to the first-to-file rule" and declining to address whether first-

8    filed action was forum shopping).  *See also, Pacesetter Sys.*, 678 F.2d at 96 (a

9    determination of whether to deviate from the first-to-file rule is left to the sound

10   discretion of the court in which the first-filed action was brought.); *Reliance Ins.*

11   *Co. v. Six Star, Inc.* 135 F. Supp. 2d 49, n. 2 (S.D.N.Y. 2001) (citing *Citigroup, Inc.*

12   *v. City Holding Co.,* 97 F. Supp. 2d 549, n. 4 (S.D.N.Y. 2000) (same).  As the court

13   observed in *Horn & Hardart Co.*, when asked to enjoin a lawsuit filed in another

14   court only 2-1/2 hours later:

15       We do not see how the brevity of the interlude can effect [sic] the
         danger of inconsistent results and the duplication of judicial effort.
16       One court or the other must decide which case is to proceed, and
17       controlling authorities place the burden upon us [the first-filed court].

18   476 F.Supp. at 1060-61.

19       The issue of whether to deviate from the first-to-file rule is already squarely

20   before the New York court in DISH's motion for an anti-suit injunction.  This

21   Court should refrain from ruling on Fox's *ex parte* Application pending the New

22   York court's determination of whether the first-to-file rule bars this action from

23   proceeding.

24       In the email from Fox's counsel informing DISH's counsel that Fox will not

25   take its motion for expedited discovery off calendar pending a decision on venue in

26   the New York action, Fox cites three cases that it claims stand for the proposition

27   that the court for the second-filed action should determine where the action is

28   venued.  *Cedars Sinai Med. Ctr. v. Shalala,* 125 F.2d 765, 769 (9th Cir. 1997);

1   *Shizzle Pop LLC v. Wham-O, Inc.*, 2010 WL 3063066, at *2 (C.D. Cal. Aug. 2,

2   2010); *Heartland Payment Sys., Inc. v. Verifone Israel Ltd.*, 2010 WL 1662478, at

3   *2 (N.D. Cal. Apr. 22, 2010). These cases do not support Fox's position.

4          In each of the cases cited by Fox, it was the ***defendant*** in the second-filed

5   case asking that the court dismiss, stay or transfer the second-filed action based on

6   the first-to-file rule. Rather than seeking an anti-suit injunction from the first-filed

7   court, the defendants in the second-filed actions had instead asked the second-filed

8   court to dismiss. This would be the same as if DISH had asked this Court to

9   dismiss this action, rather than asking the New York court to enjoin this action.

10  None of those cases stand for the proposition that the second court can ***proceed***

11  with a matter over the objection of the party who had filed first in a different forum,

12  and when the first-filed court had already been asked to determine the proper

13  venue.

14         Indeed, the very cases cited by Fox stand only for the proposition that a

15  second-filed court may ***dismiss, stay or transfer*** the second action, ***not*** that it may

16  ***proceed*** with the action over the objection of the party who filed first. *See e.g.,*

17  *Cedars-Sinai* at 769 ("the second district court has discretion to transfer, stay or

18  dismiss the second case…"); *Shizzle Pop* at *2 ("If the first-filed rule applies, the

19  second-filed court has the discretion to transfer, stay or dismiss."). As the court

20  found in *Heartland Payment Systems*, "according to the first-to-file doctrine, a

21  district court may decline jurisdiction over an action when a complaint involving

22  the same parties and issues has already been filed in another district." 2010 WL

23  1662478, at *2. The court went on to explain: "If the rule applies, the court in

24  which the second suit was filed may transfer, stay or dismiss the proceeding *to*

25  *allow the court in which the first suit was filed to decide whether to try the case.*"

26  *Id.* (emphasis added). Fox is not asking this court to stay, transfer or dismiss this

27  action, or to decline to exercise jurisdiction over this matter. It is asking that this

28  court exert jurisdiction over this matter in disregard to the fact that the first-filed

1  court has already been asked to determine the proper venue.

2          **3.**     **Even Absent the Benefit of the First-to-File Rule,
3  Compelling Reasons Exist for Proceeding in New York**

4          Even if, *arguendo*, DISH was not entitled to deference for having been the

5  first-to-file, compelling reasons exist for having this controversy heard in New

6  York. Initially, it should be noted that the first-to-file rule applies equally to a

7  declaratory relief action as to any other action. As the court in *Genentech* observed:

8          When the declaratory action can resolve the various legal relations in
9          dispute and afford relief from the controversy that gave rise to the
10          proceedings and absent sound reason for a change of forum, the first-
        filed declaratory relief action is entitled to precedence as against a
11          later-filed...infringement action.

12  998 F.2d at 938.

13          Moreover, where, as here, a declaratory relief action can resolve all of the

14  disputes between the parties and prevent a multiplicity of suits in different forums,

15  it provides an even more compelling reason to have the case adjudicated in that

16  forum. *See Puri v. Hearthside Food Solutions LLC*, 2011 U.S. Dist. LEXIS

17  144191, at *8-9 (C.D. Cal. Dec. 13, 2011) (where defendant's action sought

18  declaratory judgment beyond the scope of plaintiff's infringement action, it should

19  be given priority). Here, compelling reasons exist to allow DISH's declaratory

20  judgment action to proceed even aside from the timing of the complaints.

21          **a.**     **Forum Selection Clauses and Convenience of the
22  Parties Weigh in Favor of Proceeding in New York**

23          DISH is not based in New York; it is based in Denver, Colorado. It brought

24  its action in New York because it re-transmission agreements with two of the four

25  networks for which DISH seeks a declaration of rights require disputes be

26  adjudicated in New York. Moreover, the re-transmission agreements between

27  DISH and three of the four networks call for the application of New York law. Not

28  one of the agreements provides for venue in California or allows for application of

California law.  Not one.

All of the parties have substantial contact with New York.  The principal places of business for ABC, NBC, and CBS are all in New York City.  Fox maintains an office in New York as well and conducts substantial business there and News Corp., the parent of Fox, has its headquarters in New York City.  As detailed further in DISH's motion in New York, the convenience of the parties and witnesses makes New York a more appropriate forum for this dispute.

b.  **DISH's Declaratory Judgment Action Avoids Piecemeal Litigation and Multiplicity of Lawsuits**

This case is about the networks' copyrights and the re-transmission agreements between the parties.  The copyright issues and the parties' rights under the re-transmission agreements are interrelated, as evidenced by the fact Fox filed claims for both copyright infringement and breach of contract.  The only reason CBS did not include a breach of contract claim is because its agreement with DISH requires all claims arising out of the contract to be brought in New York (or Colorado), and the only reason NBC did not include a breach of contract claim was to avoid its bargained-for New York choice of law provisions, and to create the false impression that the issues are not related.  ABC, which has not yet brought suit, also has New York venue and choice of law provisions in its agreement with DISH.

DISH brought copyright and contract claims together, because those issues must be resolved in order to clear the cloud of uncertainty over DISH and its right to provide Auto Hop to its subscribers.  DISH filed a single, comprehensive action in New York to settle its dispute with the networks in its entirety, and because the contracts and locations of the defendants make New York the ideal, proper forum within which to litigate this dispute.

**4.   No Exceptions to the First-to-File Rule Apply Here That Would Justify Proceeding in a Later-Filed Forum**

If this Court considers whether an exception exists here to the first-to-file rule—which it should not do since that is within the jurisdiction of the first-filed court—it should find that no such exception applies.  Anticipatory suits are found when a plaintiff notifies the defendant with "specific, concrete indications that a suit by the plaintiff is imminent and the defendant then rushes into court in a more convenient forum to it in an effort to preempt the plaintiff." *Xoxide Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192-93 (C.D. Cal. 2006).  Courts apply this exception most often when either a cease and desist letter has been sent seeking settlement and notifying the defendant of the possibility of litigation absent the settlement or where settlement discussions are ongoing and a party misleads the other into expecting further settlement efforts so as to bring a suit in its favored forum. *Id. See also, Z-Line Designs, Inc. v. Bell'O Intl., LLC*, 218 F.R.D. 663, 665-66 (N.D. Cal. 2003) (first-filed action found to be anticipatory when filed in response to threat of imminent lawsuit in cease and desist letter).

Unlike the cases finding an anticipated lawsuit, Fox gave no indication of its immediate intent to bring suit.  Quite to the contrary, the Networks' statements to the press were designed to create the false indication that they intended to wait a month before filing. Matthew Belloni, *DISH vs. TV Networks:  Attorneys Readying Showdown over Auto Hop*, THE HOLLYWOOD REPORTER (May 23, 2012), http://www.hollywoodreporter.com/thr-esq/dish-auto-hop-tv-networks-lawsuit-327958.  No efforts were made by Fox or the other networks to contact DISH to discuss Auto Hop.  Thus, if anyone was seeking to "steal a march" to the courthouse, it was Fox, which was ready to file suit soon after DISH and before it was even served with the DISH complaint.  DISH's complaint did not prevent or delay any settlement discussions.

While it is true that DISH brought suit against Fox due to threats the

1   networks made in the media concerning Auto Hop, such general anticipation over a
2   potential lawsuit is not the type of anticipation that gives rise to an exception to the
3   first-to-file rule.  If it were otherwise, then every declaratory relief action would be
4   considered anticipatory since a reasonable apprehension over a lawsuit must exist
5   for there to be an actual controversy to allow for a declaratory judgment.  *See,*
6   *Chiron Corp. v. Advanced Chemtech, Inc.*, 869 F. Supp. 800, 802 (N.D. Cal. 1994)
7   ("indiscriminately applying [the anticipatory lawsuit exception] would run afoul of
8   the first-filed rule, which governs forum choices whether or not the first-filed action
9   is a declaratory relief action," and would "trump the first-filed rule" for any
10  declaratory relief action).

11      The courts generally reject application of any exceptions to the first-to-file
12  rule when indicia of bad faith or gamesmanship are missing.  In *Summit Entm't v.*
13  *Bath & Body Works Brand Management, Inc.*, 2011 WL 2649973 *1 (C.D. Cal.,
14  July 3, 2011), the court granted the defendant's motion to dismiss the later-filed
15  California action due to the first-filed New York Action for declaratory judgment.
16  The court first found that the defendant had failed to show that the declaratory
17  judgment action was an anticipatory filing for the purpose of forum shopping
18  because the plaintiff did not concretely indicate to the defendant that a lawsuit was
19  imminent.  Unlike here, the plaintiff there had sent a cease and desist letter but it
20  did not use explicit language of a threat of an immediate lawsuit for failure to
21  comply with the cease and desist.  Further, the court found that there was no
22  evidence of bad faith since, although the filing of the declaratory judgment action
23  may have been a "tactical decision," the defendant did not mislead the plaintiff into
24  believing settlement discussions would be continued.

25      DISH brought its action in New York because it provided a single forum to
26  resolve all issues between it and the networks concerning its Auto Hop feature.
27  Indeed, its agreements with CBS and ABC contain mandatory forum selection
28  clauses that require actions be brought in New York (or Colorado in the case of

CBS) and New York law governs disputes involving its agreements with Fox, NBC and CBS. There is simply no evidence to suspect that DISH filed in New York either in bad faith or to engage in improper forum shopping.

If there is any evidence of gamesmanship, in fact, it is Fox and the other networks that are engaging in it. Fox, lacking a mandatory forum selection clause, brought its claims in California based on both copyright infringement and breach of contract. NBC declined to bring a cause of action based on its re-transmission agreement with DISH in order to avoid the New York choice of law provision in that agreement. CBS, however, whose agreement with DISH does contain a forum selection clause, conveniently brought an action only for copyright infringement. This is true even though the same firm represents both CBS and NBC, and virtually identical, but separate complaints were filed on their behalf, and even though all three California suits arise out of the same occurrence, *i.e.*, DISH's launch of Auto Hop, and all three suits would call for a determination of substantially similar questions of law, Fox, CBS and NBC each filed separate suits in the same court within a two-hour window and each affirmatively declared that it was unaware of any related cases.

But even putting aside the gamesmanship of the networks in seeking to avoid suit in the contractually-agreed forum, allowing suit to proceed in California necessarily would require lawsuits to proceed on both coasts. This is because DISH's contract-related claims with CBS and ABC must be determined in New York (or Colorado in the case of CBS). Allowing this case to proceed would result in a splitting of claims between California and New York.[3]

**B.**   **Plaintiff Has Not Demonstrated It Is Entitled to *Ex Parte* Relief**

Again, at this juncture, this Court should simply abstain from deciding Fox's

---

[3] As set forth in DISH's papers filed in New York, the CBS and ABC forum selection clauses apply not only to contract claims but also to claims arising under or out of the contracts. As a result, the copyright claims of these networks would have to be determined in New York as well, further splitting the actions between New York and California.

1   *ex parte* application until the court in New York determines the appropriate forum

2   for this dispute.  If, however, the Court were to decide this application, it should be

3   denied.  As the moving party, the burden is on Fox to demonstrate a need for *ex*

4   *parte* relief.  *Buchanan v. Neighbors Van Lines*, 2010 U.S. Dist. LEXIS 108390, at

5   *3 (Sept. 27, 2010); *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F.

6   Supp. 488, 492 (C.D. Cal. 1995).  The burden is on Fox to show that it would be

7   "irreparably prejudiced" if the underlying motion were heard according to regular

8   notice motion procedures.  *Mission Power Eng'g Co.*, 883 F. Supp. at 492; *see also*

9   *In re Intermagnetics*, 101 B.R. 191, 193 (C.D. Cal. 1989) (identifying proper bases

10   for *ex parte* applications as including "where there is some genuine urgency such

11   that 'immediate and irreparable injury, loss, or damage will result to the

12   applicant . . . .'" (citation omitted)).  Fox's *ex parte* application has failed to meet

13   that burden.

14        At issue is in this *ex parte* application is whether Fox has demonstrated that it

15   will be irreparably prejudiced unless DISH is required to respond to Fox's motion

16   for expedited discovery by Wednesday, May 30, 2012 (less than a week after Fox

17   filed this case and only three business days after the case was filed).[4]  The only

18   described urgency for Fox's *ex parte* application is that it needs the discovery in

19   order to move for a preliminary injunction.  *Ex parte* App. at 3.  But what Fox

20   intends to move to enjoin and what the immediacy is for that injunction is not

21   entirely clear.  Fox's complaint attacks not only DISH's Auto Hop feature that was

22   announced on May 10, 2012, but also its PrimeTime Anytime and Sling Adaptor

23   products.  The expedited discovery sought by Fox likewise seeks discovery

24   pertaining to Auto Hop, PrimeTime Anytime and the Sling Adaptor.  The Hopper

25   PrimeTime Anytime has been available to viewers for several months, since March

26   2012.  The Sling product has been on the market for at least six years.  Fox seems

27

28   _____

[4] If required to do so, DISH will respond to the merits of the expedited discovery
   motion in a separate memorandum.

DEFENDANTS' OPP. TO PLAINTIFFS' *EX PARTE* TO
SHORTEN TIME FOR MTN FOR EXPED. DISC.
CV12-04529 GHK (SHx)

1  to have anticipated a declaratory judgment action by DISH, and hastily added this

2  stale claim in an effort to distinguish its action and make it appear different.  No

3  explanation is given by Fox as to why the Court should shorten time on a motion

4  for expedited discovery on features that have been on the market for months or

5  years.  Further, the network rating sweeps period is at an end.  Most of Fox's

6  promotions programming has concluded its regular season, and Fox is now showing

7  reruns.

8       In fact, Fox cites no evidence at all in support of its arguments that the

9  Hopper will "destroy Fox's own exploitation of its works in the separate market for

10  video on demand, electronic download of commercial free programs, and mobile

11  distribution" or that "the entire broadcast television business could collapse" if Fox

12  is required to request expedited discovery as part of a normally noticed motion.

13  Fox's unsupported hyperbole is not sufficient to demonstrate a need for *ex parte*

14  relief.

## IV.   CONCLUSION

16       Based upon the above, DISH requests that the Court take no action on Fox's

17  *ex parte* application, based upon the "first to file" rule.  However, should the Court

18  take any action, DISH requests that the application be denied for Fox's failure to

19  show good cause.

20  Dated:      May 29, 2012     ORRICK, HERRINGTON & SUTCLIFFE LLP

22  By:_____

23           WILLIAM A. MOLINSKI
          Attorneys for Defendants
24        Dish Network L.L.C. and Dish Network
              Corp.