JENNER & BLOCK LLP
Richard L. Stone (Bar No. 110022)
rlstone@jenner.com
Andrew J. Thomas (Bar No. 159533)
ajthomas@jenner.com
David R. Singer (Bar No. 204699)
dsinger@jenner.com
Amy M. Gallegos (Bar No. 211379)
agallegos@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071

Attorneys for Plaintiffs
Fox Broadcasting Company, Twentieth Century
Fox Film Corp., and Fox Television Holdings, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX BROADCASTING COMPANY, TWENTIETH CENTURY FOX FILM CORP., and FOX TELEVISION HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>DISH NETWORK L.L.C. and DISH NETWORK CORP.,<br><br>Defendants. | Case No.  12-CV-04529-DMG (SH)<br><br>**FOX'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISH TO IMMEDIATELY PRODUCE DOCUMENTS IT ALREADY AGREED TO PRODUCE**<br><br>Fed. R. Civ. P. 37; C.D. Cal. L.R. 37-2.3<br><br>**Date:** May 7, 2013<br>**Time:** 10:00 a.m.<br>**Courtroom:** 550<br><br>The Honorable Stephen J. Hillman |

2190490.1

Dish asks the Court to not intervene here, claiming "that day has not come." Joint Stip. at 4. Dish already escaped court intervention two months ago when it convinced Fox to withdraw its Original Motion to Compel on the understanding that Dish would substantially complete its production of responsive emails and documents within 30 days. *See* Singer Decl., Exh. 16 at 181. It has now been *55 days* since Fox withdrew its Original Motion to Compel and *seven months* since Fox served its document requests. But Dish has produced only *one* responsive email in the entire case. Now Dish says it should not have to produce any responsive emails until the end of *June 2013* – nine months from the date of Fox's request. Joint Stip. at 23. The day for Court intervention is indeed here.

1. **Dish Is Not Excused From Discovery In This Lawsuit Just Because It Chose to File Another Lawsuit in SDNY**

Dish *chose* to infringe the copyrights of four broadcast networks and *chose* to file duplicative litigation in the Southern District of New York ("SDNY").[1] And, when Dish's improper anticipatory action against Fox was dismissed by the SDNY court in favor of this one, Dish could have agreed to transfer all proceedings here. Instead, Dish *chose* to proceed in two jurisdictions.

Fox sued Dish in California and sought dismissal of the SDNY claims to avoid litigating in New York. Fox won that motion. That means Fox is *not* subject to the SDNY's "pilot" electronic-discovery protocols that dramatically alter the burdens of discovery by requiring plaintiffs to determine which of defendants' employees may have relevant emails and guess which keywords to use for searching them. Under the normal discovery rules followed by this District, the burden of gathering responsive documents rests on the responding party, i.e., the party with exclusive access to the custodians and documents in question.

---

[1] After learning that the networks were going to sue, Dish raced to court and filed declaratory relief actions against the networks in SDNY. Dish beat Fox to the filing window by a mere 29 minutes.

- 1 -

2190490.1

Contrary to Dish's insinuations, this case has *never* been ordered consolidated or coordinated with the SDNY action. Instead, Dish – not Fox – was ordered to coordinate its discovery with this action. But instead of coordinating discovery, Dish has been obstructing it. Dish has taken the untenable position that the SDNY discovery trumps the discovery in this action by refusing to even begin producing admittedly responsive documents until the parties in the SDNY action complete their numerous time-consuming electronic-discovery protocols.

However, pursuant to the Standing Order in *this* lawsuit, the parties must "begin to conduct discovery actively before the Scheduling Conference." Dkt. No. 33 (Aug. 2, 2012 Standing Order § 3.b). Fox sued Dish nearly one year ago and served its first set of document requests under Rule 34 on September 20, 2012. Singer Decl., Exh. 1. On their face, and under Rule 34(b)(2)(E), the requests seek emails and electronic discovery. Nonetheless, after many months of prodding and threatened motions by Fox, Dish had produced only *one* email.[2] Singer Decl. ¶ 25. That is the opposite of "active" discovery. Even worse, Dish has not produced *any* documents concerning Fox's breach of contract or Sling Adapter claims, which are not even at issue in the SDNY action. With respect to these documents, Dish cannot possibly blame a slow discovery process in SDNY.

2.  **Dish's Burden Objections Are Meritless Because Dish Already Agreed to Produce Every Document At Issue**

Dish claims it is sitting on 1.35 million potentially relevant emails and documents but has been unable to produce any of them because it supposedly must "coordinate discovery between this action and the SDNY Action." Freilich Decl. ¶ 2; Joint Stip. at 18. Dish claims Fox's requests are unduly burdensome and complains that it had to answer an amended complaint and oppose two preliminary injunction motions over the past year. Joint Stip. at 18. That is nonsense. First,

---

[2] Apparently, Dish is delaying discovery in the SDNY action too. The discovery cutoff is in six weeks, but Dish has not produced any emails in that action.

- 2 -

2190490.1

1  Dish cannot revive its burden objections to the requests at issue because it already
2  agreed to produce the documents. *See* Joint Stip. at 9 & n.4 (citing case law).
3        Second, Dish cannot seriously complain about the burdens of litigating a
4  straightforward copyright infringement and breach of contract case. No fewer than
5  six lawyers from three different offices of Orrick, Herringon and Sutcliffe LLP,
6  plus two more from Durie Tangri LLP, have already appeared on behalf of Dish.
7  Answering two complaints and opposing two motions over a 12-month period is
8  hardly an undue burden for a company as litigious as Dish (it was involved in more
9  than 18 lawsuits in 2012-2013 alone).[3]

### 3. Dish's Production of "13,000 Pages of Documents" Is A Sham

11        It is hornbook law that a party responding to document requests may not
12  "simply dump[] large quantities of unrequested materials onto the discovering party
13  along with the items actually sought." 8B Charles Alan Wright, Arthur R. Miller,
14  et al., *Federal Practice & Procedure* § 2213 (3d ed. 2012); *Rothman v. Emory*
15  *Univ.*, 123 F.3d 446, 455-56 (7th Cir. 1997) (sanctioning party that produced
16  responsive documents in boxes containing "numerous other unrelated,
17  nonresponsive materials" because party "rebuffed his obligation to sort through the
18  documents and produce only those responsive to [the] request").[4]
19        Dish tries to convince the Court it has been diligent in producing documents.
20  But Dish's production has been padded with all sorts of non-responsive clutter.
21  Singer Decl. ¶¶ 23-25. Dish's so-called document production includes nearly 2,000

---

[3] *See* Dish Network Corporation, Annual Report (Form 10-K) (Feb. 20, 2013), *available at* http://dish.client.shareholder.com/financials.cfm.
[4] *See also Loparex, LLC v. MPI Release Techs., LLC*, 2011 WL 1326274, at *2 (S.D. Ind. Mar. 25, 2011) ("Trying to overwhelm opposing counsel with irrelevant documents . . . is, of course, highly improper.") (internal citation omitted); *Hagemeyer N. Am., Inv. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (improper to mingle responsive documents with large numbers of nonresponsive documents); *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 462-63 (S.D. Ohio 1995) (admonishing party that "delivered over one thousand pages of irrelevant nonresponsive documents to plaintiff's counsel, presenting him with the tedious and time-consuming task of separating the relevant from the irrelevant.") (internal citations omitted).

pages of News Corp.'s public securities filings (which Fox never requested). *Id.* ¶ 24. A large chunk consists of publicly available case law and administrative proceedings, including a 482-page FCC report on the VOD industry (also not requested). *Id.* Dish's document production even includes more than 1,300 pages that are simply copies of *pleadings from this lawsuit. Id.* After Fox withdrew its Original Motion to Compel (believing Dish would begin to produce actually responsive documents), Dish continued to play games. Dish's March 1 production of 150 documents consisted mostly of duplicates (only 20 new documents) and contained one email. *Id.* ¶ 25. Dish's March 7 production did not contain a single document responsive to the requests at issue here. *Id.*

Then, on April 2, the day after Fox filed this motion to compel, Dish appears to have gathered a stack of irrelevant documents and sent them to Fox without any review. That production contained 179 pages of trademarks and logos for various cable networks that have nothing to do with this case; 133 pages of non-responsive Dish advertisements for "waiting room" and "business" services to doctors, dentists, and restaurants; more than 80 pages of other advertising materials that make no mention of the infringing services at issue (PrimeTime Anytime, AutoHop, and Sling Adapter); and four documents that are simply blank. Additionally, Dish produced more than 400 videos containing several hours of Dish commercials that have *nothing* to do with this case and were not requested by Fox (such as advertisements about Dish's "Blockbuster Movie Pass"; promotions for third-party cable networks; Dish's "NFL Red Zone" sports channel package; and other services not at issue).[5] Then, on the eve of this supplemental brief, Dish tried to save face by producing 16 emails, but they were not responsive to any of Fox's document requests either. Obviously Dish is padding its document production to create the illusion of compliance with its discovery obligations. Dish has moved

---

[5] If requested, Fox can make the documents available for *in camera* inspection.

form sheer delay to outright bad-faith obstruction. Dish's 13,000-page production does not contain any of the documents Dish promised to produce two months ago.[6]

### 4. The Court Should Reject Dish's Remaining Excuses

Dish offers one excuse after another. Dish now claims (for the first time) that if it were ordered to immediately produce the documents at issue, it would be forced to go back and review 1.3 million documents a second time in order to respond to Fox's other requests. No it wouldn't. Surely Dish's process for gathering responsive documents involves something more than simply reading every one of its employees' million-plus emails. Just like Fox (and every other sophisticated litigant), Dish can locate relevant documents by interviewing employees, running electronic word searches, or simply looking in the right places.

Dish also claims there is no "rush" for it to comply with its promise to produce responsive documents because no depositions have been noticed and there are no looming deadlines. These excuses must also be rejected. First, Fox is hardly "rushing" Dish. This lawsuit has been pending for a year and, in the meantime, Dish continues to infringe Fox's copyrights, breach the parties' contract, and irreparably harm Fox on a daily basis.[7] Second, the reason Fox has not noticed any depositions is because Dish refuses to produce relevant documents or emails. While Dish may prefer it if Fox were forced to depose Dish's employees without a reasonable opportunity to read Dish's relevant emails, Fox specifically sought to avoid that prejudice by serving its document requests seven months ago.

DATED: April 23, 2013   JENNER & BLOCK LLP

By   /s/ Richard L. Stone
     Richard L. Stone
     Attorneys for Plaintiffs

---

[6] Against this backdrop, Dish's cheeky request for financial compensation is not worthy of a response. *E.g.*, Joint Stip. at 24 n.12.

[7] The District Court found that Dish's conduct was causing "some" irreparable harm to Fox. *See* Singer Decl., Exh. 26 at 272, 280.

2190490.1