1   JENNER & BLOCK LLP
    Richard L. Stone (Bar No. 110022)
2   Andrew J. Thomas (Bar No. 159533)
    David R. Singer (Bar No. 204699)
3   Amy M. Gallegos (Bar No. 211379)
    633 West 5th Street, Suite 3600
4   Los Angeles, CA 90071
    rstone@jenner.com
5   ajthomas@jenner.com
    dsinger@jenner.com
6   agallegos@jenner.com

7
    Attorneys for Plaintiffs
8   Fox Broadcasting Company, Twentieth Century
    Fox Film Corp., and Fox Television Holdings, Inc.
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  FOX BROADCASTING COMPANY,      Case No.  12-CV-04529-DMG (SH)
    TWENTIETH CENTURY FOX FILM
14  CORP., and FOX TELEVISION
    HOLDINGS, INC.                 **AMENDED JOINT REPORT OF**
15                                 **THE PARTIES PURSUANT TO**
                 Plaintiffs,       **FRCP 26**
16
    v.                             Scheduling Conference:  Dec. 6, 2013
17                                 Time:  11:00 a.m.
    DISH NETWORK L.L.C.,           Courtroom: 7 (2nd Floor)
18  DISH NETWORK CORP., and
    ECHOSTAR TECHNOLOGIES
19  L.L.C.

20               Defendants.

21

22

23

24

25

26

27

28

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, and the Court's October 2, 2013 order setting the Scheduling Conference (Dkt. 198), plaintiffs Fox Broadcasting Company, Twentieth Century Fox Film Corporation, and Fox Television Holdings, Inc. (jointly, "Fox") and DISH Network L.L.C., DISH Network Corp. (jointly "DISH"), and EchoStar Technologies L.L.C. (together with DISH, "Defendants") submit this Amended Joint Report and Discovery Plan[1].

## 1.    Neutral Statement of Case

Fox asserts claims for copyright infringement and breach of contract relating to DISH's PrimeTime Anytime, AutoHop, Sling Adapter, DISH Anywhere, Hopper with Sling, and Hopper Transfers services, features, and/or products.  Fox's copyright claims are for direct and secondary infringement.  Fox seeks preliminary and permanent injunctive relief, as well as specific performance, statutory and other damages.

Defendants deny each of Fox's allegations.  Defendants deny they are directly or secondarily infringing Fox's copyrights.  Defendants have asserted various affirmative defenses including, but not limited to, fair use.  DISH alleges that its conduct is authorized under the parties' contract.

## 2.    Initial Disclosures

The parties exchanged initial disclosures under Rule 26(a)(1) on September 21, 2012.

---

[1] The parties have agreed to email service in this case and that such service will be treated the same as service via U.S. Mail for purposes of the Federal Rules of Civil Procedure.  The parties have also agreed that voluminous filings, as well as manual filings, shall be personally served.

- 2 -

### 3.     Preservation of Discoverable Information

Counsel have notified their respective clients about their obligations to preserve discoverable information (documentary and electronic).  As set forth in the parties' original Rule 26 Report, the parties agree that text messages to mobile phones (MMS and SMS) and voicemail messages need not be preserved or collected.

### 4.     Coordination with Other Cases

This case has been related to *NBC Studios LLC, et al. v. DISH Network Corp., et al.*, No. CV 12-04536 DMG (SHx) (the "NBC Action").  However, as of March 27, 2013, the NBC Action has been stayed.

**Fox's Position:**

Defendants are also being sued by ABC and CBS in the Southern District of New York (the "SDNY Action").  *See In Re Autohop Litigation*, Case No. 1:12-cv-0415; *CBS Broadcasting Inc. v. DISH Network Corp.*, 1:12-cv-06812.  The SDNY Action has never been formally coordinated, consolidated, or related to this case. On July 9, 2012, after dismissing DISH's SDNY declaratory action against Fox as an improper anticipatory filing, Judge Swain wrote that "[t]he parties are directed to use their best efforts to coordinate the taking and use of discovery in the remaining aspects of this action and the California litigation so as to avoid duplication and inefficiency."  *Id.* at 13.  *See* Dkt. 90, Case No. 1:12-cv-04155.

Consistent with Judge Swain's direction, Fox has agreed that depositions of Defendants' witnesses concerning the functionality of any technology at issue in both this action and the SDNY Action can be coordinated so that the same witnesses need not be deposed twice.  However, this is the only area of factual inquiry that sufficiently overlaps between this case and the SDNY Action warranting shared depositions of Defendants' witnesses.  The lawsuits involve

AMENDED RULE 26 REPORT

1   numerous different claims and issues.  For example, CBS, ABC, and Fox each have

2   unique contracts with DISH and unique breach of contract claims; each of the

3   parties' contracts was separately negotiated;  CBS is suing DISH for fraud; and Fox

4   is suing Defendants over multiple services and products that are *not* at issue in the

5   SDNY Action, including Sling Adapter, DISH Anywhere, Hopper Transfers and

6   Hopper with Sling.

7          Except for depositions concerning functionality of the technology at issue,

8   Fox intends to rely on the maximum number (and duration) of depositions

9   permitted by the Federal Rules of Civil Procedure.  It would be inefficient, unfair

10  and prejudicial if Fox were forced to share its depositions with the plaintiffs in the

11  SDNY Action.  This action and the SDNY Action have proceeded along very

12  different procedural tracks.  The discovery cutoff in the SDNY Action is

13  January 24, 2014.  By contrast, the *initial* scheduling conference in this action is set

14  for December 6, 2013, and there is currently no discovery cutoff.  Discovery in the

15  NBC Action has not even begun yet.  Fox was never consulted on, nor did it agree

16  to, the schedule in the SDNY Action.

17         Fox would be especially prejudiced if forced to depose Defendants'

18  witnesses before the SDNY Action discovery cutoff because Fox has been waiting

19  for DISH to produce documents it agreed to produce five months ago in response to

20  Fox's *First* Set of Document Requests that was served over a year ago.  Concerned

21  that DISH would delay its document production until the eve of depositions, Fox

22  filed a motion to compel.  In response to the motion to compel, DISH assured the

23  Court that it expected to complete its production by the end of *June 2013*.

24  Magistrate Hillman denied Fox's motion as premature because a scheduling

25  conference had not yet been set in this action.  But Magistrate Hillman further

26  instructed DISH that its agreed-to document production should be "*well under way*

27  *by the end of June, 2013*."  DISH continued to drag its feet and, on October 4, 2013,

28  informed Fox that its response to Fox's *First* Set of Document Requests would not

- 4 -

1   be complete until the end of *October 2013*.  Despite Fox's request for confirmation

2   on November 15, DISH still has not confirmed whether all responsive documents

3   have been produced.  Moreover, Fox has served numerous additional document

4   requests over the past year, all of which remain outstanding.

5          As predicted, Defendants are now trying to force Fox to depose their key

6   witnesses before the January 24 discovery cutoff in the SDNY Action and before

7   Fox has had a reasonable opportunity to complete its document discovery.  This is

8   the exact prejudice Fox has been trying to avoid.  Defendants are also trying to

9   impose the SDNY schedule on Fox, even though Defendants *never* sought Fox's

10  input on the SDNY schedule.  Fox would not have agreed to a discovery cutoff in

11  January 2014, nor would Fox have agreed to delay all depositions until the last two

12  months of discovery, which would require them to be scheduled over Christmas

13  and New Years, when many witnesses and clients are on holiday.  Defendants'

14  insistence on forcing Fox to depose Defendants' key witnesses within the next eight

15  weeks is also at odds with Defendants' request to delay trial in this action until

16  April 28, 2015.  Defendants want Fox to rush through its depositions without the

17  benefit of full document discovery, while they prepare a defense, gather documents,

18  and notice Fox's depositions at a leisurely pace.

19         Additionally, the pre-trial scheduling order issued by Judge Swain in the

20  SDNY Action (cited by Defendants below) is dated August 3, 2012.  Significantly,

21  Fox had already been dismissed from the SDNY Action, so the order was not meant

22  to apply to Fox.  More likely, Judge Swain was concerned that CBS and DISH were

23  parties to litigation in both Los Angeles and New York.  However, those concerns

24  were alleviated on September 9, 2012, when this Court transferred the CBS Action

25  to SDNY.  *See* Dkt. 66, Case No. 2:12-cv-04551.

26         Lastly, Defendants ignore the fact that NBC is also suing Defendants in this

27  District and discovery has not yet commenced in that action because it is currently

28

AMENDED RULE 26 REPORT

1    stayed (pending Fox's appeal of the court's denial of its preliminary injunction

2    motion).[2]

3         In short, Defendants *chose* to infringe the copyrights of four separate

4    broadcast networks.  Further, Defendants *chose* to force two of the networks to

5    litigate in New York rather than California along with Fox.  Having made those

6    strategic choices, Defendants cannot complain about the supposed burden of

7    litigating in two districts at once.

8

9         **Defendants' Position:**

10        Defendants are parties to a related case pending in the Southern District of

11   New York captioned *DISH Network L.L.C. v. American Broadcasting Companies,*

12   *et al.*, No. 12 Civ. 4155 (LTS) (KNF), involving copyright and contract claims

13   related to PrimeTime Anytime and AutoHop.  A Pre-Trial Scheduling Order was

14   entered by Judge Laura Taylor Swain in that case on August 3, 2012[3] that, among

15   other things, orders that:  "The parties must continue to use their best efforts to

16   coordinate discovery activities in the New York and California proceedings,

17   including notifying judges in both proceedings of problems that implicate both

18   proceedings."

19        Based upon this direction from Judge Swain, Defendants have made every

20   effort to coordinate discovery in the two actions and to avoid unnecessary

21   duplication of efforts.  For example, Defendants have been making coordinated

22   productions of documents in these cases, producing as many documents jointly to

23   all parties as practicable.

24

25   _____

     [2] Fox's petition for rehearing en banc is still pending.  On August 30, 2013, the
26   Ninth Circuit ordered DISH to file a response to Fox's petition.  *See* Dkt. 99, Case
     No. 12-57048.
27   [3] Amended Pre-Trial Scheduling Orders were entered on March 4, 2013, May 7,
28   2013, and September 10, 2013.

2243547.2

1   Fox has resisted such coordination.  Earlier this year, Magistrate Hillman

2 denied a motion to compel by Fox, which sought to force Defendants to prioritize

3 document production in response to particular Fox requests ahead of Defendants'

4 overall joint production for all actions, finding that:

> Fox seemingly ignores Judge Swain's direction to
> coordinate discovery in the New York and California
> cases, and to avoid duplication and inefficiency.  Nothing
> could flout the spirit and intent of Judge Swain's order
> more than the filing of this Motion.  While Fox
> understandably is eager to move forward with this
> lawsuit, the filing of this Motion has served only to force
> Dish to devote resources opposing the Motion, thus
> ironically serving to delay the production of documents to
> which the parties have agreed.  (Dkt. 194.)

13   Most recently, Defendants have repeatedly requested that Fox attend and

14 participate in the depositions of DISH and EchoStar employees as they are

15 scheduled and take place in the New York action, and treat those depositions as

16 noticed in this action as well.  Defendants are currently in the process of meeting

17 and conferring with ABC and CBS in the New York action on the number of

18 depositions per side, the particular witnesses sought by each party, and the dates for

19 depositions.  To date, no deposition dates have been scheduled.

20   Given the significant overlap of issues between the cases, it would be

21 inefficient for individuals to be deposed in both cases on the exact same topics.

22 Despite Fox's assertion to the contrary, the very same direct and indirect copyright

23 infringement claims are asserted with respect to the PrimeTime Anytime and

24 AutoHop features in both actions against the same defendants.  ABC, CBS and Fox

25 each claim that through the PrimeTime Anytime and AutoHop features, Defendants

26 "reproduce and distribute" the networks' copyrighted works, that the networks are

27 suffering substantial harm as a result, and Defendants are directly liable for

28 copyright infringement.  Compare Fox's First Amended Complaint (Dkt. 138) ¶¶

2243547.2

1   64-79 with ABC's Amended Answer and Counterclaims (SDNY Dkt. 133) ¶¶ 64-

2   70 and CBS's Amended Counterclaims (SDNY Dkt. 69-1) ¶¶ 56-62.  Similarly,

3   ABC, CBS and Fox each claim, in the alternative, that through the PrimeTime

4   Anytime and AutoHop features, Defendants are inducing DISH subscribers to make

5   unauthorized reproductions of the network's copyrighted works, which is

6   substantially harming the networks, and Defendants are indirectly liable for

7   copyright infringement.  Compare Fox's First Amended Complaint (Dkt. 138) ¶¶

8   80-90 with ABC's Amended Answer and Counterclaims (SDNY Dkt. 133) ¶¶ 71-

9   78 and CBS's Amended Counterclaims (SDNY Dkt. 69-1) ¶¶ 63-69.  Additionally,

10  the networks have made the very same factual and legal arguments in their

11  preliminary injunction and appellate briefings.

12        Nevertheless, Fox has objected to coordinated deposition discovery, and

13  insists upon reserving its rights to take duplicative depositions.  In essence, Fox

14  requests that it be permitted more than the default number of depositions for this

15  case, by piggybacking on all of the deposition discovery from New York action,

16  and then taking another ten depositions of seven-hours' duration in this case alone.

17        Fox's alleged concerns regarding participation in these depositions do not

18  justify its refusal to cooperate.  First, with respect Fox's argument that the cases are

19  largely factually and legally distinct, Defendants have no objection to Fox not

20  attending a New York deposition if Fox believes the witness does not have any

21  knowledge relevant to Fox's case.  Fox would then, however, need to make a

22  showing of good cause to have the same witness produced for deposition in this

23  case.  This should alleviate any concerns that Defendants are requesting that Fox be

24  forced to sit through the deposition of a witness that only has knowledge relevant to

25  ABC's or CBS's contract history.  Defendants do not expect Fox to participate in a

26  deposition that is exclusively on CBS's or ABC's contract claims.  Second, with

27  respect to Fox's argument that it cannot participate in depositions because of the

28  status of Defendants' document production, Fox is simply wrong in suggesting that

- 8 -

Defendants are not far along in their production of documents in response to Fox's nearly 200 requests. Fox fails to mention that Defendants have been making substantial productions on a rolling basis and that Defendants have produced more than 53,000 pages of documents to date, which is more than double the number of pages of Fox's current production. DISH's production has resulted from a process required by the court in New York, where the parties have agreed on custodians and keyword terms. In addition, DISH has supplemented the universal production based on the New York process with additional custodians and keywords specifically relevant to Fox's particular allegations. This process has resulted in production of a substantial set of documents relevant to all common network claims, and the parties in New York are proceeding to depositions on that basis. There is no reason why Fox cannot do the same. Given the actual facts, it is clear that Fox has more than enough documents from DISH to be able to meaningfully participate in depositions. Moreover, Defendants have offered to meet and confer with Fox about limited, additional deposition time should any material evidence be provided to Fox subsequent to the New York depositions. Accordingly, there would be no prejudice to Fox by participating in the depositions, even if its worst fears about Defendants' document production were true (which they are not).

Defendants request that this Court instruct Fox to participate in the depositions of DISH and EchoStar employees in the New York action in good faith, as noticed depositions in this case, to the extent that witnesses are being deposed with respect to copyright issues common to both actions, without precluding Fox from requesting additional limited depositions of those witnesses in this action should significant, new information be produced by Defendants subsequent to the New York depositions. There is nothing prejudicial or unfair about Fox cooperating with deposition scheduling. By contrast, Fox's suggested deposition procedure is duplicative, burdensome and unfair.

5. **Discovery Timing and Cutoff**

Subject to Section 4 above (regarding coordination with related cases), the parties agree to conduct written, documentary, and deposition discovery as permitted by the Federal Rules of Civil Procedure. The parties do not believe discovery should be conducted in phases. The parties' proposed discovery cutoff dates are set forth in Exhibit A.

6. **Discovery Subject Matter**

Without waiver or limitation, Fox will seek discovery on the following subjects: (a) Defendants' Hopper, PrimeTime Anytime, AutoHop, Sling Adapter, Hopper with Sling, DISH Anywhere, and Hopper Transfers products, services, and features; (b) Defendants' alleged direct infringement of Fox's copyrights; (c) Defendants' alleged secondary infringement of Fox's copyrights; (d) DISH's alleged contract breaches; (e) Fox's alleged irreparable harm; (f) Defendants' alleged fair use defense; (g) Defendants' alleged affirmative defenses; (h) Fox's alleged statutory damages; (i) Fox's alleged reasonable royalty damages.

Without waiver or limitation, DISH will seek discovery on the following subjects: (a) Fox's claims and allegations; (b) fair use; and (c) Fox's allegations of irreparable harm; and (d) damages.

7. **Electronic Discovery**

The parties have already agreed on an electronic discovery protocol.

**Fox's Position:**

For reasons unknown to Fox, the SDNY Action was designated as being subject to the SDNY's "pilot" case management rules for complex cases. The "pilot" program is ill-suited to this case and contrary to the rules of this District. The SDNY's "pilot" electronic-discovery protocols dramatically alter the burdens

- 10 -

of discovery by requiring *plaintiffs* to determine which of *defendants'* employees may have relevant emails and then guess which keywords to use for searching them.  Under the normal discovery rules followed by this District, the burden of gathering responsive documents rests on the responding party, i.e., the party with exclusive access to the custodians and documents in question.  Defendants never brought a motion in this action to change the rules of discovery or to impose the SDNY's "pilot" electronic discovery in this action.  Instead, Fox and Defendants have proceeded to search for, gather, review and produce many thousands of documents without following the SDNY "pilot" rules.  Furthermore, in an effort to cooperate and compromise, Fox informed Defendants that, where appropriate to reduce burden, the parties could meet and confer about electronic word searches.  Indeed, the parties have already done so on several occasions.

### Defendants' Position:

In the parties' first Joint Rule 26 Report, they "agree[d] that reasonable limitations should be imposed on the number of custodians subject to electronic discovery as well as the search and review of electronically stored information."  Notwithstanding this agreement, Fox refused to meet and confer on custodians and search terms.  Fox took the position that each party should independently decide upon its custodians and search terms.  Defendants invited Fox to participate in the discussions that took place between Defendants and the other parties to the SDNY Action, where agreement was reached on these issues, but Fox declined to participate.

### 8.   Protective Order

A Protective Order governing discovery of confidential information has already been entered by the Court (Dkt. 25).  The parties have agreed to amend the existing protective order to allow both parties to designate material for outside-

- 11 -

2243547.2

counsel-eyes-only.  The parties anticipate providing a revised proposed protective order to the Court prior to the scheduling conference.

### 9. Attorney-Client Privilege and Attorney Work Product

The Protective Order in this action provides that:

> If any person inadvertently produced in discovery any information subject to attorney-client privilege, work product doctrine or any other privilege, protection, or immunity, and the requirements of Federal Rule of Evidence 502(b) have been satisfied, the producing party may (promptly upon learning of such production) notify the receiving party(ies) of such production and seek the return and/or destruction of such information as set forth below.  Upon such notification:  the receiving party(ies) shall promptly return to the producing person or shall destroy all such information (including, without limitation, all originals and copies of any documents containing or comprising such information); the information (including, without limitation, all originals and copies of any documents containing or comprising such information) shall continue to be privileged, protected, and/or immune; and no use shall be made of such information (including, without limitation, all originals and copies of any documents containing or comprising such information) by the receiving party(ies), nor shall it be disclosed to anyone by the receiving party(ies). The receiving party(ies) shall promptly provide to the producing person a written certification of the complete return or destruction of such information (including, without limitation, all originals and copies of any documents containing or comprising such information); provided that, to the extent any receiving party has incorporated any such information in its own work product, it may (instead of providing such work product to the producing person) destroy such information incorporated in that work product and promptly certify to such destruction. Nothing herein, however, shall preclude the receiving party(ies) from subsequently challenging

that such materials are privileged, or that any such
privilege has not been waived.

The parties agree that privilege logs will not be required for communications
between parties and their outside counsel that occurred after this lawsuit
commenced.

### 10.    Complex Case Designation

The parties agree this case should not be designated as a Complex Case.  The
case presents no unusual legal issues.  The Manual for Complex Litigation should
not apply to this case.

### 11.    Dispositive or Partially Dispositive Motions

The parties anticipate filing summary judgment and/or summary adjudication
motions.  Specifically, Fox intends to file a motion for summary adjudication on the
issue of liability.  The parties proposed motion cutoff dates are set forth in
Exhibit A.

**Fox's Position:**

Fox does not believe there is any reason to deviate from this Court's
proposed time computations for the dispositive motion cutoff.  Defendants'
proposed schedule requires moving the trial date from December 9, 2014 (proposed
by Fox) to April 28, 2015 – nearly three years from the date Fox filed this lawsuit.
Given that Fox is seeking a permanent injunction and specific performance, three
years is excessive.

**Defendants' Position:**

The parties agree upon a fact discovery cut-off of August 5, 2014 and that
expert discovery should begin in September 2014, but the parties' proposed

2243547.2

schedules diverge after that point.  Fox proposes that dispositive motions be filed in August 12, 2014, a week after fact discovery closes, and before expert discovery. However, the experts will necessarily play an important role in the analysis of the copyright issues here.  It makes more practical sense to have summary judgment briefing after the completion of expert discovery.

Defendants propose that dispositive motions be filed on December 19, 2014, three weeks after the close of expert discovery.  Further, Defendants propose that each party be provided five weeks to prepare oppositions (to account for the multiple holidays in that period), January 23, 2015, and three weeks to prepare replies, February 6, 2015.  Defendants propose that the Court be given three weeks to review the papers, prior to a scheduled hearing on the motions, February 27, 2015.

### 12.   <u>Alternative Dispute Resolution ("ADR")</u>

The parties have selected ADR Procedure No. 3 (private mediator), as reflected on the parties' ADR Procedure Selection Form, filed on September 19, 2012 (Dkt. 91).

**Fox's Position:**

Fox believes that ADR is premature until discovery is substantially completed and the pending appeals have been resolved.

**Defendants' Position:**

Defendant is willing to engage in settlement or ADR discussions at this time.

- 14 -

AMENDED RULE 26 REPORT

**13.    Amendment of Pleadings / Additional Parties**

**Fox's Position:**

The deadline for amending the pleadings and adding additional parties should be no later than 60 days after the December 6, 2013 scheduling conference. However, Fox requests a later deadline (November 11, 2014) for amending the complaint to identify new, copyrighted works that are alleged to have been infringed by DISH up to the time of trial.

**Defendants' Position:**

Defendants object to any further amendment of the complaint in this action, except to identify new copyrighted works alleged to have been infringed by Defendants.  Defendants propose a cut-off date for the identification of any new copyrighted works of 30 days prior to the end of fact discovery to afford Defendant the opportunity to pursue discovery regarding the validity of the alleged copyrights.

**14.    Expert Witnesses**

The parties' proposed deadlines for expert disclosures and reports are set forth in Exhibit A.  The parties agree that expert discovery should begin on September 9, 2014.

**Fox's Position:**

As set forth above, Fox believes this Court's proposed time computations for expert discovery are appropriate.  The expert discovery in this case is no different than any other case.  Moreover, Defendants' assertions about multiple shifting burdens are incorrect.  The disgorgement provisions of the Copyright Act are

AMENDED RULE 26 REPORT

1    straightforward, and not nearly as complicated as DISH suggests.[4]  There is no

2    reason why the parties cannot exchange their expert reports at the same time, and

3    then exchange rebuttal reports.  In any event, Fox is willing to consider the mutual

4    exchange of sur-rebuttal reports, as long as it does not result in a delay of the trial

5    date.  DISH's proposed schedule requires moving the trial date from December 9,

6    2014 (proposed by Fox) to April 28, 2015 – three years from the date Fox filed its

7    lawsuit.

8

9         **Defendants' Position:**

10        Depending on the damages theories that Fox pursues on its copyright claims,

11   there may be shifting burdens of proof, which would necessitate three rounds of

12   expert disclosures.  Specifically, if Fox files an expert report in support of a

13   disgorgement claim, then the burden shifts to Defendants to apportion the alleged

14   damages and show their deductible expenses.  Thus, Defendants propose that initial

15   expert disclosures be exchanged on the issues for which each party initially bears

16   the burden of proof, followed by a second round of disclosures with rebuttal and

17   any issues for which the burden may have shifted, and then an third round of

18   disclosures to reply to those issues raised in the first instance during the second

19   round.  Defendants propose such a three-phased structure in their proposed

20   schedule in Exhibit A.

21        During the parties' conference, Fox stated that it would not object to a third

22   expert disclosure, as long as it did not delay Fox's proposed trial date in this action.

23   However, as set forth in Section 15 below, Fox's proposed trial date of December

24   2014 is unrealistic.  Moreover, given the importance of Fox's response to the issues

25   _____

26   [4] 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is
     required to present proof only of the infringer's gross revenue, and the infringer is

27   required to prove his or her deductible expenses and the elements of profit

28   attributable to factors other than the copyrighted work.").

2243547.2

1   on which Defendants have the shifted burden of proof, incorporating a third expert

2   report into the schedule is important, even if it does extend expert discovery.

3       Additionally, DISH requests specific separate deadlines be provided for

4   Daubert motions, coordinated with the parties summary judgment motions.

5   Daubert motions in this case will take more time and effort to prepare and respond

6   to than other potential motions in limine, and can be efficiently dealt with in

7   conjunction with summary judgment.

8

9       **15.   <u>Jury Trial</u>**

10      The parties have each requested a jury trial.  The parties' preliminary

11  estimate for trial is 3 weeks.  The parties do not anticipate severance, bifurcation, or

12  other changes in the standard order of proof at trial.

13

14      **Fox's Position:**

15      Fox was never consulted on the trial date in the SDNY Action.  Fox filed its

16  lawsuit against Defendants in May 2012.  Fox is seeking injunctive relief and

17  specific performance and should not be forced to wait three years for a trial.

18  Furthermore, there is no trial date set in the SDNY Action – merely a trial readiness

19  conference.  Depending on Judge Swain's calendar, trial in the SDNY Action may

20  not take place until months later.  Furthermore, Defendants and ABC have already

21  disclosed that they are negotiating a new distribution agreement that could result in

22  a settlement of ABC's lawsuit against Defendants.  As such, it makes no sense to

23  prejudice Fox and delay trial in this action in order to accommodate the mere

24  possibility that the SDNY Action goes to trial in October 2014.  As noted above,

25  Defendants made the decision to violate the rights of multiple parties *and* to litigate

26  these cases in two separate districts.  Fox should not have to pay the price for that.

27

28

AMENDED RULE 26 REPORT

**Defendants' Position:**

Defendants propose an April 28, 2015 trial date in this case. This date allows for the necessary three rounds of expert disclosures and Daubert briefing, as discussed in Section 14, above. This date also provides for an expanded summary judgment briefing schedule, as detailed in Section 11, above, necessitated by the complex issues in this case. Thus, while the trial date proposal deviates from the Court's template proposal, it does so for good reason, given the nature of this case.

Fox's proposal of a December 2014 trial date for this case is unrealistic. There is a final pretrial conference scheduled in the NY Action for October 3, 2014, which is also the trial ready date for that case. Fox's proposed December trial leaves Defendants without time to prepare for a second trial and creates a possibility that the trials may proceed concurrently, which would unfairly prejudice Defendants. Moreover, it provides insufficient time for expert discovery, briefing and decision on summary judgment motions, and Daubert motion practice, considering the complex legal issues involved in this case.

Dated:     November 22, 2013          JENNER & BLOCK LLP


By:  /s/ David R. Singer
_____
   David R. Singer
   Attorneys for Plaintiffs

Dated:     November 22, 2013          ORRICK, HERRINGTON &
                                      SUTCLIFFE LLP


By:  /s/ Annette Hurst
_____
   Annette Hurst
   Attorneys for Defendants

- 18 -

AMENDED RULE 26 REPORT

2243547.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

AMENDED RULE 26 REPORT

2243547.2

| MATTER | REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL** [] Court [X] Jury Duration Estimate: 3 weeks | Fox: Tue., Dec. 9, 2014<br><br>Defendants:<br>Tue., April 28, 2015 | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")** 4 wks before trial | Fox: Tue., Nov. 11, 2014<br><br>Defendants:<br>March 31, 2015 | 2:00 p.m. |

| MATTER | TIME COMPUTATION | REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off | 60 days after scheduling conference | **Fox**: February 4, 2014<br><br>**Defendants**:<br>No further amendment |
| Non-Expert Discovery Cut-Off<br><br>(includes hearing on discovery motions) | At least 14 wks before FPTC | August 5, 2014 |
| Motion Cut-Off, including Dispositive Motions (filing deadline) | At least 13 wks before FPTC | **Fox**: August 12, 2014<br><br>**Defendants**:<br>December 19, 2014 (opening briefs)<br>January 23, 2015 (opposition briefs)<br>February 6, 2015 (reply briefs)<br>February 27, 2015 (hearing date) |

AMENDED RULE 26 REPORT

2243547.2

| Initial Expert Disclosure & Report Deadline[5] | At least 9 wks before FPTC | September 9, 2014 |
|---|---|---|
| Rebuttal Expert Disclosure & Report Deadline[6] | At least 5 wks before FPTC | October 7, 2014[7] |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | At least 3 wks before FPTC | **Fox**:  October 21, 2014<br><br>**Defendants**:<br>  November 28, 2014 |
| Settlement Conference Completion Date | At least 4 wks before FPTC | **Fox**:  October 14, 2014<br><br>**Defendants**:<br>  December 1, 2014 |
| Motions in Limine Filing Deadline | At least 3 wks before FPTC | **Fox**:  October 21, 2014<br><br>**Defendants**:<br>  Daubert motions:<br>  December 19, 2014<br>  All other MILs:<br>  March 3, 2015 |

---

[5] Defendant proposes that these first disclosures address issues for which each party initially bears the burden of proof.

6 Defendant proposes that these second disclosures address rebuttal, as well as issues on which a burden may have shifted, including apportionment and expenses.

[7] Defendant proposes a third set of disclosures to provide rebuttal to issues for which the burden shifted and that those disclosures be due on or before October 28, 2014.

- 2 -

AMENDED RULE 26 REPORT

| | | |
|---|---|---|
| Opposition to Motion in Limine Filing Deadline | At least 2 wks before FPTC | **Fox**: October 28, 2014<br><br>**Defendants**:<br>Daubert motions: Jan. 23, 2015 (oppositions)<br>February 6, 2015 (replies)<br>February 27, 2015 (hearing date)<br>All other MILs: March 17, 2015 |
| Other Dates – Last day to add copyrighted works to complaint | | **Fox**: November 11, 2014<br><br>**Defendants**:<br>30 days before non-expert discovery cut-off |

- 3 -

AMENDED RULE 26 REPORT

2243547.2