JENNER & BLOCK LLP
Richard L. Stone (Bar No. 110022)
Andrew J. Thomas (Bar No. 159533)
David R. Singer (Bar No. 204699)
Amy M. Gallegos (Bar No. 211379)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
rstone@jenner.com
ajthomas@jenner.com
dsinger@jenner.com
agallegos@jenner.com

Attorneys for Plaintiffs
Fox Broadcasting Company, Twentieth Century
Fox Film Corp., and Fox Television Holdings, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX BROADCASTING COMPANY, INC., TWENTIETH CENTURY FOX FILM CORP., and FOX TELEVISION HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>DISH NETWORK L.L.C. and DISH NETWORK CORP.,<br><br>Defendants. | Case No.  12-CV-04529-DMG (SH)<br><br>**DECLARATION OF MICHAEL BIARD IN OPPOSITION TO MOTION COMPEL PRODUCTION OF DOCUMENTS** |

## DECLARATION OF MICHAEL BIARD

I, Michael Biard, declare as follows:

1. I am employed by Fox Cable Network Services, LLC as President, Distribution. In this position, I oversee the negotiation of licensing and distribution agreements on behalf of Fox Broadcasting Company and Fox Television Holdings, Inc. (as well as other sister companies). I have personal knowledge of the facts stated herein, and if called and sworn as a witness at trial or at any other hearing before this Court, would and could competently testify as set forth herein. I submit this declaration in opposition to defendants Dish Network L.L.C.'s and Dish Network Corp.'s (collectively, "Dish") motion to compel production of documents by plaintiffs' Twentieth Century Fox Film Corp., Fox Broadcasting Company, and Fox Television Holdings, Inc. (collectively, "Fox").

2. In my role as President, Distribution, I am directly involved in – and often the lead negotiator for – Fox's contractual negotiations with multichannel video programming distributors ("MVPDs"), including cable television systems and direct broadcast satellite television providers, such as Dish, who distribute Fox's television networks and related content to their subscribers.

3. I serve in a similar role with respect to Fox's contractual negotiations with third parties (including, but not limited to MVPDs) seeking to license and distribute Fox's television network programs and related content in a "non-linear" format (i.e., distribution other than full-time standard television networks) such as video on demand ("VOD") services, Internet streaming, and digital downloads.

4. I have worked for Fox since 2000. For more than 10 years I have been negotiating and analyzing business deals in the cable television and broadcast television industries. I also have been negotiating non-linear distribution and licensing agreements for approximately 10 years. I have a detailed understanding of the competitive landscape in the television distribution business including, the competition that exists between and among the MVPDs. There are more than 1,000

MVPDs that currently operate in the U.S. The broadcast television business is also highly competitive. There are four major broadcast television networks (Fox, ABC, NBC, CBS) and hundreds of additional broadcast, cable, and pay-TV channels with which they compete.

### The Fox Network and Its TV Station Affiliates

5. Fox Broadcasting Company operates the Fox broadcast television network (the "Fox Network"), one of the four major commercial television broadcast networks in the United States. The Fox Network has more than 200 local television station "affiliates" that broadcast the network's television programming over the airwaves, free of charge, to virtually anyone with a working antenna and television. Fox Television Holdings, Inc. owns and operates 18 of these local television stations. The remaining affiliates are independently owned and operated.

6. The Fox Network provides its affiliates with access to valuable television content including both daytime programming (such as sports) and programs for broadcast during the primetime evening hours, when television viewership peaks.[1] Some of these programs are produced by third parties and licensed for broadcast by the Fox Network. Many of the programs are produced by other Fox-related entities and are owned by Twentieth Century Fox Film Corp., including popular and critically acclaimed television series such as *Glee*, *Family Guy*, *Touch*, *Bones*, and *The Simpsons*.

7. Fox's relationships with its TV station affiliates are governed mainly by station affiliate agreements (the "**Local TV Station Affiliate Agreements**") as well as federal communications laws. There are approximately 191 Local TV Station Affiliate Agreements currently in place. Over the past seven years, Fox has entered into more than 1,600 Local TV Station Affiliate Agreements, renewals, and/or amendments to these agreements. These agreements cover a wide range of

---

[1] Primetime for the Fox Network is 8:00 p.m. to 10:00 p.m. Eastern, Monday through Saturday. On Sundays, prime time begins an hour earlier.

1  contract terms and topics, most of which involve the process and mechanics of
2  broadcast television such as the timing that Fox delivers programming to local
3  affiliates; the manner in which Fox delivers programming to stations and how
4  stations broadcast it over the air; the obligation of the stations to broadcast Fox
5  Network programs in their entirety; the amount and content of Fox Network
6  programming to be broadcast; the stations' preemption rights for replacing Fox
7  Network programming; and marketing and promotion of the network. The
8  financial terms governing the parties' relationship (which, as discussed below, are
9  highly confidential) are typically addressed in separate letter agreements
10 appurtenant to the Local TV Station Affiliate Agreements in order to protect them
11 against disclosure to competitors.

### Retransmission Consent and MVPDs

13  8. Many television viewers subscribe to cable, satellite, or telco MVPDs
14 to receive their broadcast television programming instead of using a traditional
15 antenna. Those subscriptions allow them to receive broadcast television (i.e.,
16 programming that is broadcast over the airwaves), as well as cable television (i.e.,
17 programming that is not broadcast over the airwaves) directly to their televisions or
18 through an integrated receiver (sometimes called a "set-top box"). Under federal
19 communications law, MVPDs must obtain a broadcast station's consent to
20 retransmit the station's signal to their subscribers (also known as "retransmission
21 consent"). Owners of broadcast television stations, such as Fox Television
22 Holdings, Inc., are entitled by law to charge MVPDs, such as Dish, fees and/or
23 other consideration in exchange for granting consent to retransmit those stations'
24 signals to their subscribers (commonly referred to as "retransmission consent
25 fees").

26 9. Because of this statutory scheme, Fox Television Holdings, Inc.,
27 through its owned and operated broadcast television stations, enters into
28 retransmission consent agreements ("**RTC Agreements**") with various MVPDs,

- 4 -

who make the stations' signals, including the Fox Network programming, available to their subscribers for a fee.

10. Last year alone, Fox negotiated and entered into more than 150 different RTC Agreements. Over the past seven years, Fox has negotiated and entered into more than 300 different RTC Agreements.

11. Fox and Dish are parties to a 2002 RTC Agreement that has been amended several times and which remains in effect today.

**The Local TV Station Affiliate Agreements And RTC Agreements Are Highly Confidential, And Producing Them Would Be Unduly Burdensome.**

12. I understand that Dish is seeking production of Fox's RTC Agreements with Dish's competitors, as well as its Local TV Station Affiliate Agreements, from the past seven years. These agreements are highly confidential and contain Fox's and third parties' commercially sensitive, highly confidential business information.

13. Fox's RTC Agreements with MVPDs are especially sensitive. The TV distribution business is fiercely competitive, and Fox's negotiations with MVPDs (i.e., Dish's *direct competitors*) often last for months and result in agreements that extend for several years. If Dish knew the economic terms of Fox's contracts with other MVPDs, especially for the period of time beyond the current term of Dish's agreement with Fox, Dish could use that information in future negotiations with Fox. Increasingly, as evidenced by this very litigation, the scope of the non-economic rights granted to an MVPD are often as hotly negotiated as the economic terms, and access to others' agreements with Fox would afford Dish invaluable insight into Fox's non-public business information, which Dish could use against Fox. Indeed, just the term of those agreements, i.e., when they expire, is valuable information that could be exploited by Dish. By contrast, Fox does not know (nor does it have access to) Dish's (or any other MVPD's) agreements with other broadcast or cable networks. The playing field would not be level, which could

severely undermine Fox's ability to negotiate acceptable business deals in the future.

14. Additionally, it has been my experience that MVPDs zealously guard the terms of their RTC Agreements from their competitors. All of Fox's RTC Agreements contain non-disclosure provisions, which are desired by both sides. Among other reasons, MVPDs do not want their competitors to have the negotiating leverage that comes with knowing what others have agreed to pay for similar rights, or the scope of the rights they have been able to secure, and they do not want their competitors using knowledge of what others are paying or the rights they have secured to negotiate more favorable deals than they would otherwise be able to secure for themselves.

15. The economic terms of Fox's Local TV Station Affiliate Agreements are also highly confidential and, as noted above, are contained in confidential side letters. Because Dish negotiates for retransmission consent with Fox's TV station affiliates, Dish would be advantaged in those negotiations if it knew all the terms of the stations' agreements with Fox.

16. Dish's demand for copies of every Local TV Station Affiliate Agreement and RTC Agreement from the past seven years covers more than 1,900 separate agreements, renewals, and amendments. Additionally, many of these documents, namely the older agreements, are stored at off-site facilities. I estimate that it would take 10 employees at least 100 hours just to locate and collect all of these agreements (not including the time needed to copy each of the agreements).

17. By contract, or as a matter of policy, Fox would also need to notify hundreds of TV affiliates and MVPDs before producing their confidential agreements to Dish. This process alone would be very time-consuming. If these third parties object, it could take even more time (especially if they want to intervene). Furthermore, I would expect all of these non-parties to object to Dish's document requests for their proprietary, highly confidential information, especially

given that, because of Dish's nationwide footprint, every single TV affiliate does business directly with Dish and every single MVPD competes directly with Dish.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 29th day of May, 2014 at Los Angeles, California.

_____
Michael Biard

- 7 -

2172768.2