JENNER & BLOCK LLP
Richard L. Stone (Bar No. 110022)
Andrew J. Thomas (Bar No. 159533)
David R. Singer (Bar No. 204699)
Amy M. Gallegos (Bar No. 211379)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
rstone@jenner.com
ajthomas@jenner.com
dsinger@jenner.com
agallegos@jenner.com

Attorneys for Plaintiffs
Fox Broadcasting Company, Twentieth Century
Fox Film Corp., and Fox Television Holdings, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX BROADCASTING COMPANY, TWENTIETH CENTURY FOX FILM CORP., and FOX TELEVISION HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>DISH NETWORK L.L.C., DISH NETWORK CORP., and ECHOSTAR TECHNOLOGIES L.L.C.<br><br>Defendants. | Case No. 12-CV-04529-DMG (SH)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

## I.   Introduction

Fox has already agreed to produce all retransmission consent agreements that it contends were impacted by Dish's unauthorized commercial-free VOD and Internet streaming services, and it has agreed to stipulate that any agreements not produced were *not* impacted.  This compromise completely addresses Dish's claim that it needs to see all of its direct competitors' retransmission consent agreements to prove that they were not impacted.  Dish moved to compel because its competitors' agreements with Fox are highly valuable competitive intelligence, and Dish figured it had nothing to lose by bringing a motion, since Fox's proposed compromise ensures that Dish will have the documents it actually needs regardless of how this Court rules.  This is bad faith.

Fox's agreements with its local TV station affiliates are not relevant to any issue in this case.  Local TV stations broadcast Fox Network programming free over the air to anyone with an antenna.  Fox has never claimed that Dish's unauthorized services would impact its agreements with local TV stations.  Dish's contention that these agreements were somehow put in issue by Fox is wrong, and appears to be an attempt to mislead the Court.  Dish's motion to compel should be denied in its entirety.

## II.   Dish Conceded In New York That The Terms On Which Fox Granted Retransmission Consent To Dish's Competitors Are Irrelevant.

The issue of whether retransmission consent agreements should be produced was addressed in the parallel New York litigation.  In that case, Dish moved to compel ABC to produce its VOD agreements.  At the hearing, an issue arose as to "omnibus agreements" – i.e., retransmission consent agreements that contain sections which grant VOD licenses.  Dish conceded that *it did not need* the sections of retransmission consent agreements that are *not* VOD licenses, and agreed that these agreements could be produced with all of the non-VOD sections redacted.  Tr. of Feb. 4, 2013 Hearing, *In re AutoHop Litig.*, No. 12-4155, Dkt. No. 195, at 21:3-8

- 1 -

2282418.1

(S.D.N.Y.). Fox has already produced all of its VOD agreements. Dish's concession in New York proves that Dish does not need to know what its competitors are paying Fox for retransmission consent, or any of the other terms of their agreements relating to retransmission consent, in order to defend this case.

### III.   Fox's Local TV Affiliate Agreements Are Not In Issue.

Dish's contention that Fox somehow put its agreements with local television stations in issue is wrong. To be clear, the Local TV Station Affiliate Agreements are agreements that grant local television stations the right to broadcast Fox Network programming free over the air to anyone with an antenna. TV stations that broadcast the Fox Network are known as "affiliates" – for example, the local television station KTTV is the Fox affiliate in Los Angeles. Dish, by contrast, does not distribute Fox's programming for free. Dish subscribers pay Dish subscription fees to receive the programming. Fox has argued that Dish's unauthorized commercial-free VOD and Internet streaming services harm Fox's relationships and negotiations with other cable and satellite companies who, like Dish, negotiate with Fox for the right to retransmit Fox programming to their subscribers. The reason Dish's services negatively impact these negotiations and relationships is because other cable and satellite companies have to compete with Dish for subscribers. Right now, Dish can lure subscribers by offering services that other providers cannot offer, because Dish is ignoring the terms of its license agreement that *prohibit* those services. This argument does not implicate local TV stations.

Fox did not put local TV stations in issue in this case. The snippets from Fox's complaint and other documents that Dish relies on do not have anything to do with local TV stations. For example, on page 9 of the Joint Stipulation, Dish lists some quotes which it claims show that the Local TV Station Affiliate Agreements are relevant. The first and second bullet points are quotes from the complaint and preliminary-injunction motion, respectively, that refer to the fact that Dish's commercial-free VOD service, if it becomes widespread, threatens the ad-supported

1  broadcast television ecosystem because Dish is copying the programs and making
2  them available to Dish subscribers on demand with the commercials cut out. Fox's
3  agreements with local television stations are not relevant to this argument. The
4  third bullet point is a snippet from a summary of Fox's arguments contained in the
5  introduction to its preliminary injunction motion; it is referring to Fox's ability to
6  license its programs for distribution via on-demand Internet streaming and digital
7  downloads, *not* affiliate agreements. The fourth and last bullet point refers to the
8  impact Dish's unauthorized services will have on Fox's retransmission consent
9  negotiations with Dish's MVPD competitors, and has nothing to do with Local TV
10 Station Affiliate Agreements.

11 **IV.    Fair-Use Market Harm is Not A Catchall Relevance Argument.**

12       Dish contends that because it has asserted a fair-use defense it is
13 automatically entitled to examine "Fox's economic model" including its "entire
14 distribution economics," to search for evidence that Dish's unauthorized
15 commercial-free VOD and streaming services will not harm the market for Fox's
16 copyrighted programs. *E.g.*, Joint Stipulation at 1, 14. To be clear, Dish is not just
17 using this argument to try to get its hands on Fox's agreements with its local
18 television station affiliates. Dish has also filed a motion to compel Fox to produce
19 essentially every scrap of paper produced by Fox's advertising sales department
20 over the past five years, among other things – again, on the theory that its assertion
21 of a fair-use defense somehow makes all of Fox's business documents relevant.

22       Fair-use market harm is *not* a catchall relevance argument that entitles an
23 infringer to conduct a wide-ranging exploration of all aspects of the copyright
24 owner's business to prove that the copyright owner can still capture some value
25 from its copyrights despite the infringement. Rather, the focus is on whether the
26 challenged use – here, copying Fox's content to create commercial-free VOD and
27 transmitting live programming to paying subscribers over the Internet – will
28 adversely affect the value of any of the copyright owner's rights. *See* 4 MELVILLE

- 3 -

2282418.1

1  B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.05[B][1] at 13–211
2  (Rev. Ed. 2013); *see also Lewis Galoob Toys v. Nintendo of Am., Inc.*, 964 F.2d
3  965, 971 (9th Cir. 1992) (citing with approval Professor Nimmer's example that
4  making an unauthorized movie out of a copyrighted novel is not a fair use even if
5  the defendant can prove that the infringement did not harm sales of the book). If
6  Dish were correct that the assertion of a fair-use defense triggers a requirement that
7  the copyright owner open all of its books and provide all of its confidential business
8  documents and internal communications to the infringer, then every copyright
9  lawsuit would be an e-discovery nightmare that would cost millions of dollars and
10 take years to resolve. This lawsuit is taking place because Dish is exploiting Fox's
11 copyrighted content in ways that are *expressly forbidden* by its license agreement.
12 *E.g., Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1071 (9th Cir. 2014)
13 (noting that "Fox has a good argument" that PTAT breaches the provision in Dish's
14 license agreement with Fox that prohibits Dish from offering anything "similar to"
15 VOD, and finding Dish's argument that PTAT is not similar to VOD to be
16 "dubious"). The cost to Fox of enforcing its rights should not be that it has to give
17 Dish confidential business documents that are unrelated to the case.

18      The relevance standard set forth in Rule 26 applies to copyright infringement
19 lawsuits as much as any other lawsuit. *Cf. Beinin v. Ctr. for the Study of Popular*
20 *Culture*, No. 06-2298, 2007 WL 832962, at *5 (N.D. Cal. Mar. 16, 2007),
21 *objections overruled*, No. 06-2298, 2007 WL 1795693 (N.D. Cal. June 20, 2007)
22 (denying infringer's motion to compel production of licensing agreements and
23 holding that "[t]he probative value of the requested documents in this case [] is
24 minimal at best," where defendants had "made no showing that [licenses and
25 assignments of] such disconnected photographs would have other than the most
26 tenuous relationship to the issues presented in this action"). Dish has not
27 established that Fox's Local TV Station Affiliate Agreements are relevant to any
28 claim or defense in this case, nor can it.

- 4 -

2282418.1

**V.    This Motion Is An Improper Attempt To Obtain Competitive Intelligence.**

It is unfortunately clear that this motion to compel is nothing more than a fishing expedition for competitive intelligence. The MVPDs with whom Fox has retransmission consent agreements are Dish's direct competitors and, not surprisingly, a number of them have objected to their confidential agreements being shared with Dish.  For example, DirecTV has objected on the ground that the rates and terms on which it distributes programming are heavily negotiated, closely held, and competitively sensitive, and that this information cannot be adequately protected by a protective order to which DirecTV is not a party.  DirecTV has, at minimum, requested that financial terms and proprietary information be redacted, and access to unredacted portions limited to outside counsel only.  Other MVPDs have similarly insisted that certain competitively sensitive information be redacted from their agreements before they are produced to Dish.

It is no response for Dish to say that these concerns are addressed by the protective order.  Dish's motion demands the production of competitively sensitive third-party information that is not relevant to this case and therefore is not discoverable – protective order or no.  Moreover, courts have recognized that a protective order can be insufficient to protect the disclosing party's interest where, as here, confidential business documents are being demanded by a direct competitor.  *See Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 09-0560, 2012 WL 1940662, at *5-6 (E.D. Cal. May 29, 2012) (denying plaintiff's motion to compel production of defendant's contracts with plaintiff's direct competitors); *Rodriguez v. West Pub. Corp.*, No. 06-1096, 2006 WL 2459098, at *3 (W.D. Wash. Aug. 22, 2006) (denying production of competitively-sensitive documents and holding that "[g]iven the fact that the parties are direct competitors, the existence of a protective order in the underlying litigation would likely be insufficient to fully protect [the producing party's] interests").  Dish's motion should be denied.

- 5 -

2282418.1

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: June 9, 2014 | Jenner & Block LLP |
| 3 | | |
| 4 | | |
| 5 | | By: s/ David R. Singer |
| 6 | | DAVID R. SINGER |
| 7 | | Attorneys for Plaintiffs Fox Broadcasting Company, Inc., |
| 8 | | Twentieth Century Fox Film Corp., and Fox Television Holdings, Inc. |

2282418.1