JENNER & BLOCK LLP
Richard L. Stone (Bar No. 110022)
Andrew J. Thomas (Bar No. 159533)
David R. Singer (Bar No. 204699)
Amy M. Gallegos (Bar No. 211379)
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
rstone@jenner.com
ajthomas@jenner.com
dsinger@jenner.com
agallegos@jenner.com
(213) 239-5100

Attorneys for Plaintiffs
Fox Broadcasting Company, Twentieth Century
Fox Film Corp., and Fox Television Holdings, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX BROADCASTING COMPANY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>DISH NETWORK L.L.C. et al.,<br><br>Defendants. | Case No. 12-CV-04529-DMG (SH)<br><br>**PLAINTIFFS' OPPOSITION TO NON-PARTY NBCUNIVERSAL'S MOTION TO STAY, REVIEW AND/OR MODIFY MAGISTRATE JUDGE'S DECEMBER 9, 2014 ORDER**<br><br>Hearing Date:   January 23, 2015<br>Hearing Time:   9:30 a.m.<br>Hearing Location: Courtroom 7 |

## I. Introduction

When DISH opposed Fox's 2013 preliminary injunction motion, DISH argued that its unauthorized streaming of Fox programming over the Internet did not harm Fox because there isn't a market for streaming television programs over the Internet. Paradoxically, DISH successfully opposed the preliminary injunction by persuading the Court that any alleged harm to Fox caused by DISH's unlicensed streaming of Fox programs over the Internet could be calculated by reference to comparable Internet streaming licenses. It turns out that DISH has been licensing Internet streaming rights from *other* television networks. Those license agreements prove that an Internet streaming market exists. The terms of those agreements may also serve as benchmarks for the calculation of reasonable royalty damages (i.e., what DISH would have paid Fox had it negotiated a license to stream Fox's programming over the Internet as it is now doing without authorization). Naturally, Fox requested that DISH produce "all agreements granting [DISH] the right to offer live television network programming over the Internet to DISH subscribers . . . " ("Request No. 180"). DISH refused to produce any of its agreements and Fox was forced to move to compel this very relevant evidence before Magistrate Judge Hillman.

Despite Fox making what Judge Hillman called a "very generous" and "reasonable" proposal, DISH stubbornly refused to *either* produce the relevant license agreements *or* stipulate that it would not rely on any unproduced agreements at trial. Importantly, after further motion practice and after being ordered to produce all of its Internet license agreements a month ago, DISH <u>still has not done so</u>. Trial is now a mere seven weeks away, and it is too late for DISH to ambush Fox with a last-minute production of relevant documents that should have been produced long ago.

The only solution to the conundrum DISH has placed Fox and NBC in is to enforce the "reasonable" proposal Fox originally made and preclude DISH from offering into evidence any Internet streaming licenses it has not produced. This will accommodate NBC's concerns while also preventing any prejudice to Fox from a woefully belated production of documents that DISH put at issue. Accordingly, for the reasons set forth below, the Court should preclude DISH from relying on *any* of its Internet streaming license agreements at trial that it had not produced by at least December 23, 2014 (the last day to appeal Magistrate Judge Hillman's latest Order, which DISH never appealed).

## II. Despite Fox's Reasonable and Generous Proposals and Multiple Court Orders Supporting Fox's Position, DISH *Still Has Not Produced* The Requested License Agreements.

DISH had every opportunity to timely produce its Internet streaming agreements, but chose not to. At first, DISH outright refused to produce any of its Internet streaming license agreements in response to Request No. 180, and Fox was forced to bring a motion to compel. Then, DISH tried to cherry-pick and produce only those license agreements that might help its case, while withholding the rest of them. Fox repeatedly sought to avoid this dispute by proposing what Magistrate Judge Hillman called a "very proportional and reasonable" compromise. Fox agreed to withdraw its request for DISH's live streaming agreements as long as DISH stipulated to the existence of an Internet streaming market for television programs and agreed not to rely on any license agreements not produced.

After finding that Fox had made a "very generous proposal" that was "proportional and reasonable," Magistrate Judge Hillman issued an order memorializing Fox's proposed compromise: if DISH refused to produce *all* of its Internet streaming agreements, Judge Hillman recommended that this Court

2

1  preclude DISH from relying in any way on the Internet streaming licenses that
2  DISH has failed to produce. Dkt. No. 421 at 1-3. At this Court's request, the
3  Magistrate Judge held another hearing to see whether the dispute could be resolved.
4  Dkt. No. 580. DISH agreed to produce its Internet license agreements with NBC
5  (*not* its Internet license agreements with ABC), but NBC objected to the disclosure
6  of its confidential agreements with DISH. Once again, Fox proposed the same
7  "proportional and reasonable" compromise consistent with Rule 37(c) of the
8  Federal Rules of Civil Procedure: either DISH should produce *all* of its Internet
9  streaming license agreements immediately, or DISH should be precluded from
10 relying on them at trial. DISH again rejected this reasonable compromise.

11 Then, on December 9, 2014, Magistrate Judge Hillman ordered DISH to
12 produce all of its Internet streaming agreements sought by Request No. 180.
13 Dkt. 591 at 4; *id.* at 5 ("the Court grants Plaintiff's Motion to Compel Production of
14 Documents as to Requests Nos. . . . 180"). He further ordered that "[s]uch
15 documents shall be designated 'Highly Confidential'" under the existing protective
16 order. *Id.* at 4. The Magistrate Judge's Order does *not* permit any redactions.
17 Despite the Magistrate Judge's clear Order, <u>DISH never produced the vast majority
18 of the Internet streaming licenses at issue</u>.

20 **III.    Fox Has Already Been Irreparably Prejudiced By DISH's Delay.**

21 The discovery cutoff was August 5, 2014, the parties have already exchanged
22 expert reports, and expert depositions have concluded. Moreover, Fox never agreed
23 that DISH could simply ignore the December 9th Order, nor did Fox consent to any
24 sort of interim stay of the Order. Non-party NBC's filing of a motion to stay the
25 December 9th Order did not relieve DISH of its obligation to produce the
26 documents DISH was ordered to produce. L.R. 72-2.2 ("Regardless of whether a
27 motion for review has been filed, the Magistrate Judge's ruling remains in effect

1  unless the ruling is stayed or modified by the Magistrate Judge or the District
2  Judge."). As such, even if DISH were to comply with the December 9th Order at
3  this late date, Fox has already been prejudiced by DISH's delay. That is why Fox
4  has proposed to DISH and non-party NBC that neither DISH nor Fox be allowed to
5  rely on any of DISH's Internet streaming agreements that have not already been
6  produced to Fox in this case (consistent with Magistrate Hillman's September 12,
7  2014 Order and recommendation to this Court). This proposal would appear to be
8  fair to all concerned and is consistent with the policies and approach underlying
9  Rule 37(c).

### IV.     NBC's Requested Relief Would Cause Even More Prejudice To Fox.

Fox strongly objects to non-party NBC's request to stay the December 9th Order because that would only further prejudice Fox. NBC's motion is not even set to be heard until January 23, 2015 – a mere four weeks before trial begins. NBC's additional request that numerous terms of the Internet streaming agreements be redacted is equally inappropriate and prejudicial. Among other things, NBC seeks to redact the rates paid by NBC to DISH, as well as other volume discounts and packaging requirements. Dkt. No. 594 at 10. If permitted, these redactions would make it seem as if DISH paid nothing for Internet streaming rights and would eliminate the ability of the jury or the parties' experts to draw any conclusions about the value of Internet streaming rights for television programming embedded in the various moving pieces of the agreement. If DISH's Internet licensing agreements with NBC are, in fact, comparable license agreements that could be used to calculate the reasonably royalty that DISH would have been required to pay Fox to stream Fox programs over the Internet, the parties' experts would need to analyze and inspect those agreements in their entirety. In order to quantify and analyze the value of a license to stream television programming over the Internet,

the experts would, at a minimum, need to analyze the full scope of monetary and non-monetary consideration that DISH promised NBC in exchange for live television streaming rights. NBC's request to redact large swaths of the relevant agreements (including terms and conditions that reflect valuable consideration) would severely handicap Fox's ability to respond to arguments by DISH and its expert concerning the supposed value of the rights at issue.

While Fox is sympathetic to NBC's concerns about confidentiality, those concerns are outweighed by the prejudice to Fox if DISH is allowed to redact relevant portions of the agreements. Indeed, the Court has already ordered the production of highly confidential agreements between Fox and DISH's direct competitors after finding the agreements' relevance outweighs concerns about confidentiality.

## V. **The Only Way To Address The Prejudice To Fox Caused By DISH And NBC's Confidentiality Concerns Is To Preclude DISH From Relying On Internet Streaming Agreements It Failed To Produce**.

Given the prejudice that Fox has already suffered as a result of DISH's delay, the Court should issue an order precluding DISH from relying on any terms of any DISH Internet streaming agreements that have not already been produced to Fox. This would prevent manifest prejudice to Fox, render moot any concerns that non-party NBC may have with respect to the production of its confidential information,

///
///
///
///
///

and treat DISH consistently with the aim of the Federal Rules of Civil Procedure, including Rule 37(c).

DATED: January 2, 2015         JENNER & BLOCK LLP

By:      /s/ Richard L. Stone
             Richard L. Stone

Attorneys for Plaintiffs
Fox Broadcasting Company,
Twentieth Century Fox Film Corp., and
Fox Television Holdings, Inc.